**STATE OF WEST VIRGINIA**

**CABOT OIL & GAS CORPORATION and**
**CRANBERRY PIPELINE CORPORATION,**
**Defendants Below, Petitioners,**

**FILED**
**November 9, 2017**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs. No. 16-0904** (Raleigh County No. 18-C-210-H)

**BEAVER COAL COMPANY, LIMITED,**
**Plaintiff Below, Respondent,**

and

**BEAVER COAL COMPANY, LIMITED,**
**Plaintiff Below, Petitioner,**

**vs. No. 16-0905** (Raleigh County No. 18-C-210-H)

**CABOT OIL & GAS CORPORATION and**
**CRANBERRY PIPELINE CORPORATION,**
**Defendants Below, Respondents.**

**MEMORANDUM DECISION**

Through these consolidated appeals, Cabot Oil & Gas Corporation and Cranberry Pipeline Corporation, as well as Beaver Coal Corporation, seek a reversal, either in whole or in part, of the circuit court's August 25, 2016, order through which it adopted an intervening law exception to the doctrine of res judicata, applied that exception to a prior final and binding arbitration ruling, and referred the parties to arbitration on all claims alleged in Beaver's complaint with instructions to the arbitrators on the law to be applied and the circuit court's rulings to be followed. The parties are represented by counsel: Timothy M. Miller and Callie E. Waers for Cabot Oil & Gas Corporation and Cranberry Pipeline Corporation, and J. Thomas Lane, J. Mark Adkins, and Andrew C. Robey for Beaver Coal Corporation.

1

Upon review of the parties' arguments, the appendix record, the parties' briefs and the applicable law, we affirm, in part, and reverse, in part, the referral to arbitration; reverse the application of an intervening law exception to res judicata; and reverse the directions to the arbitrators concerning the law they are to apply and the rulings they are to follow. For the reasons set forth herein, we find this case satisfies the requirements of Rule 21(c) and (d) of the West Virginia Rules of Appellate Procedure and is properly disposed of through this memorandum decision.

## I. Factual and Procedural Background

In 1929, Beaver Coal Corporation ("Beaver") and Godfrey L. Cabot, Inc. ("Godfrey Cabot") entered into a lease agreement ("1929 Lease") giving Godfrey Cabot the right to mine, explore, extract, and remove oil and gas from approximately twelve thousand acres of Beaver's land located in Raleigh County, West Virginia. In a 1956 amendment to the 1929 Lease,[1] Beaver granted Godfrey Cabot the right to use an additional 2,516 acres of Beaver's land for the operation of a gas storage field ("storage field"). Godfrey Cabot assigned its rights under the 1929 Lease to Cabot Corporation in 1960. In a separate agreement entered into in 1977, Beaver granted to Cabot Corporation a license to install, operate, and maintain a gas pipeline across a certain portion of Beaver's property ("1977 Agreement").

Cabot Corporation underwent an internal reorganization in 1982 and 1983, through which it assigned rights to various wholly-owned subsidiaries: Cabot Oil & Gas Corporation ("Cabot") was assigned the rights under the 1929 Lease and Cranberry Pipeline Corporation ("Cranberry") assumed all pipeline operations on Beaver's property, including the leased pipeline and related facilities under the 1929 Lease, and the licensed pipeline under the 1977 Agreement.[2] In 1991, Beaver and Cabot executed a Ratification of the 1929 Lease. Cabot states that it has continuously operated and produced gas under the lease since that time.

---

[1]Through various amendments, agreements, and supplements to the 1929 Lease, the total leased land now exceeds seventeen thousand acres.

[2]Beaver states that subsequent to the arbitration that is discussed *infra*, it discovered Cabot's assignments to Cranberry that occurred in 1983, which it alleges were done without Beaver's express consent and agreement.

2

Critical to the instant dispute is a provision in the 1929 Lease that reflects the parties' agreement to resolve all disputes arising under the lease through binding arbitration, as follows:

> Should any question arise between the parties hereto as to the performance by the Lessee of any of the Articles of this lease, or of any covenant contained in any of said Articles, every such question shall be determined by arbitration in the manner provided for in this Article; and the Lessee hereby covenants with the Lessor to comply with and carry out promptly the decision or award of any and every arbitration so appointed. . . . . The decisions and awards of such arbitrators, or any two of them, shall be final and conclusive and binding upon the parties hereto, with no right of appeal[.][3]

(Footnote added). There is a limited arbitration provision in the 1977 Agreement that solely applies to differences of opinion concerning the current market stumpage price of trees cut by Cabot; however, no other arbitration is provided for, nor does that agreement incorporate by reference the 1929 Lease.

Beaver states that it determined in the late 1990's that Cabot was (1) deducting post-production costs from royalties and (2) not paying royalties on the native gas produced from wells in the storage field. The parties were unable to resolve these issues, which prompted Beaver to institute an arbitration in 2001. In the arbitration, Beaver sought to resolve whether Cabot had paid proper royalties; whether Cabot could deduct post-production costs from the royalties; and whether Cabot owed royalties on the wells located in the storage field.

On July 27, 2004, the arbitration panel issued its award in which it considered then-existing law, including *Wellman v. Energy Resources, Inc.*, 210 W.Va. 200, 557 S.E.2d 254

---

[3]The 1929 Lease involves the production and sale of natural gas in interstate commerce and is between parties who are citizens of different states. Accordingly, the Federal Arbitration Act ("FAA"), 9 United States Code §§ 1-16, applies. *See CDS Family Trust, LLC v. ICG, Inc.*, No. 13-0375, 2014 WL 184441, *3 n.8 (W.Va. Jan. 13, 2014) (memorandum decision) ("The FAA is applicable to this case because: (1) there was an agreement in writing providing for arbitration; and (2) the contract evidences a transaction involving interstate commerce considering the parties' different states of residence. *Am. Home Assur. Co. v. Vecco Concrete Const. Co., Inc.*, 629 F.2d 961, 963 (4th Cir.1980).").

(2001). The panel determined that there was no "controlling West Virginia decision" and reached its decision on the deduction of post-production expenses from royalties by applying "the language of the lease[] as written." Although the panel concluded that it was the parties' intent to allow for reasonable deductions from royalty for post-production costs, it further found that the amount Cabot had deducted was not reasonable and ordered Cabot to pay as additional royalty to Beaver "an amount equal to the difference between the gathering charge Cabot actually used and the amount the arbitrators have concluded is a reasonable gathering charge[.]" Since the 2004 arbitration award, Cabot states that it has issued royalty checks to Beaver that were computed and paid in accordance with the arbitration panel's award, and that Beaver has accepted and cashed those royalty checks.

Subsequent to the 2004 arbitration award, this Court issued *Estate of Tawney v. Columbia Natural Resources, Inc.*, 219 W.Va. 266, 633 S.E.2d 22 (2006).[4] In *Tawney*, this Court held that lease language providing that the royalty is to be calculated "'at the well,' 'at the wellhead,' or similar language, or that the royalty is 'an amount equal to 1/8 of the price, net all costs beyond the wellhead,'" is ineffective to allow for any post-production costs to be deducted from the royalty. *Id.* at 268, 633 S.E.2d at 24, syl. pt. 11, in part.

On March 7, 2008, Beaver filed a complaint and petition for injunctive relief in the circuit court against Cabot and Cranberry (collectively the "Cabot defendants," except where it is necessary to refer to these parties individually) seeking: (Count I) enforcement of the 2004 arbitration award for Cabot's alleged failure to satisfy its obligations thereunder;[5] (Count II) damages for Cabot's alleged breaches of the 1929 Lease due to the underpayment of royalties, the wrongful deduction of post-production costs under *Tawney,* and Cabot's assignment of its rights under the 1929 Lease to Cranberry without seeking or obtaining Beaver's consent; (Count III) damages for Cabot's alleged breach of the 1977 Agreement by assigning its pipeline rights under that agreement to Cranberry without seeking and obtaining

---

[4]During the pendency of the parties' prior arbitration, a class action was filed against Cabot in the Circuit Court of Kanawha County seeking, inter alia, damages for deductions of post-production costs from royalties that Cabot paid to oil and gas lessors in West Virginia. Beaver states that it could not join the putative class because of its arbitration agreement with Cabot. Beaver adds that while the class action was pending, *Tawney* was issued, which led to a settlement in the pending class action with damages being paid to all class members.

[5]Beaver alleges that Cabot has failed to pay fully the refund ordered in the 2004 arbitration award.

4

Beaver's consent; (Count IV) declaratory judgment for forfeiture of the 1929 Lease; (Count V) damages resulting from Cranberry's allegedly intentional intrusion and continuous trespass upon Beaver's land; (Count VI) ejectment of Cranberry from Beaver's land; and (Count VII) declaratory judgment for forfeiture of the 1977 Agreement. The Cabot defendants removed the action to federal court where they filed a motion to dismiss.

In their motion to dismiss, the Cabot defendants asserted that Beaver's claims under the 1929 Lease were barred by the doctrine of res judicata given the prior arbitration award; that those claims were also barred by the statute of limitations pertaining to seeking a vacancy of an arbitration award; and that the trespass claims against Cranberry were barred by the applicable two-year statute of limitations. Beaver filed a response in opposition to the motion, after which the Cabot defendants filed a reply brief. In May 2008, Beaver filed a motion seeking a remand of the action to state court. By order entered February 18, 2009, the federal court remanded the action to the circuit court without ruling on the Cabot defendants' motion to dismiss.

On November 16, 2009, the circuit court held a hearing on the motion to dismiss. During this hearing, the Cabot defendants argued that all issues pertaining to the 1929 Lease were subject to arbitration; that Beaver's current claims either were or should have been raised in the prior arbitration; that the time for an appeal of the arbitration panel's 2004 award had passed; and that all issues subject to arbitration should be dismissed. Thereafter, the parties submitted proposed findings of fact and conclusions of law to the circuit court.

Through its order entered on July 13, 2010, the circuit court denied the motion to dismiss. The court found that *Tawney* constituted an intervening change in the law, which created an exception to the finality of the arbitration award and the doctrine of res judicata. The circuit court concluded that given the "intervening change of law in the *Tawney* decision . . . when viewing the facts in a light most favorable to Beaver, Beaver at this time states a claim upon which relief may be granted against Cabot for underpayment of royalties."

On August 12, 2010, the Cabot defendants filed a motion for clarification or, alternatively, for relief from the circuit court's order denying their motion to dismiss. In this motion, they stated that if the circuit court did not relieve them from the "operation and effect" of the order denying their motion to dismiss, and "compel arbitration of [Beaver's] claims," they intended to "seek relief from the Order by filing a petition for writ of

5

prohibition with the Supreme Court of Appeals of West Virginia."[6] Although a hearing was held on the motion on November 12, 2010, the circuit court never ruled on the motion.

The Cabot defendants filed an answer to the complaint on December 2, 2010, in which they asserted arbitration as an affirmative defense, stating that "[a]ll disputes between parties which form the subject matter of the Complaint must be submitted to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*, and the dispute resolution agreement bargained for and agreed upon by the parties." An agreed order was entered by the circuit court on December 11, 2013, setting forth a briefing schedule for the parties to address "certain outstanding legal issues . . . necessary . . . for this case to proceed in a timely fashion."[7] The parties addressed these five issues—the Cabot defendants through a motion

---

[6]The Cabot defendants further asserted in this motion that the circuit court had failed to address the arbitrability of Beaver's claims or the court's jurisdiction over those claims.

[7]These legal issues were set forth in the December 11, 2013, order, as follows:

A. Whether Cabot's 1983 assignment to its wholly-owned subsidiary, Cranberry Pipeline Corporation, constitutes a violation of the 1929 Lease or the 1977 License Agreement.

B. Whether the 1929 Lease and/or the 1977 License Agreement have been forfeited or terminated due to the assignment, or, alternatively, whether Beaver's remedies are limited to those compensable damages, if any, which may be allowed by law and proven at trial.

C. Whether Beaver's claims regarding the assignment are barred by any affirmative defenses asserted by Cabot, including ratification of the lease, statute of limitations, laches, estoppels, waiver.

D. Whether the award of the arbitrators [in 2004] regarding royalty payments between the parties, operates as a *res judicata* or bar to the re-litigation of the issues decided by the Arbitration Panel, and whether the Court's ruling in this regard is suitable for certification [] [to] the West Virginia Supreme Court of Appeals.

E. If not barred by *res judicata*, whether monetary or volumetric deductions made by Cabot from Beaver's royalties were improper under the terms of the

6

for partial summary judgment and Beaver through a memorandum of law. An evidentiary hearing was held before the circuit court on February 21, 2014, during which testimony was given and oral arguments were presented in support of the parties' respective positions.

On March 27, 2014, the circuit court entered an agreed order directing the parties to submit proposed orders on the Cabot defendants' motion for partial summary judgment. Although the parties submitted their respective proposed orders, a ruling was not forthcoming.[8] Instead, on August 25, 2016, the circuit court entered a final order through which it removed the action from its docket and directed the parties to arbitration on all claims, finding the referral was required by the arbitration provision in the 1929 Lease. In this final order, the circuit court recognized an intervening law exception to the doctrine of res judicata, which it found was applicable to Count II of Beaver's complaint. As the circuit court explained:

> The real question is whether the issues before this Court, and subject to arbitration, are precluded by *res judicata*. This Court is required to make that decision because, as previously found, the contract does not delegate that decision to the arbitrators. This Court has previously found that the issues raised by the plaintiff herein are not precluded by the doctrine of *res judicata* because of the limited exception to that doctrine and identified as a "subsequent change in law." This case is not an appeal but is, in part, a direct demand for resolution of issues not previously addressed by the arbitrators.

The circuit court then addressed the 2004 arbitration award and found the arbitrators had "used the *Wellman* case to support their conclusion that the defendant could in fact impose certain costs incurred in transporting and marketing the gas produced from the plaintiff's property." Having determined that *Tawney* represented "a significant shift in West Virginia

1929 Lease and West Virginia law, and if so, the time period for which Beaver is entitled to damages.

(Footnote omitted).

[8]In the absence of a ruling on the motion for partial summary judgment, the parties sought a status conference with the circuit court, which was held on April 4, 2016. During this status conference, the circuit court asked the parties, who had previously engaged in an unsuccessful mediation, whether another mediation would be productive. The parties informed the court that another mediation would be unproductive.

Law [and] that the case must be brought before the arbitrators again[,]" the circuit court ordered that all issues in Beaver's complaint, as well as the five legal issues identified in the court's December 10, 2013, order, be referred to arbitration, and it instructed the arbitrators, as follows:

> [T]he arbitrators will be required to recognize the existence of the change in law identified in the *Tawny* [sic] case and to the extent the arbitrators are required to determine the relative positions of the parties in this case, if *Tawny* [sic] is relevant to the issues to be resolved by the arbitrators then *Tawny* [sic] will trump *Wellman.* The issues raised in Counts I, III, IV, V, VI and VII are new issues and are subject to arbitration without the necessity of an analysis of the *res judicata* claims.

The circuit court concluded that "the arbitration herein ordered shall be conducted pursuant to the requirements of [] [the 1929 Lease] and the rulings in this order." These consolidated appeals followed.

## II. Standard of Review

The circuit court's August 25, 2016, order removed this action from the court's docket and compelled the parties to arbitration. As this Court has previously held, we "will preclude enforcement of a circuit court's order compelling arbitration only after a de novo review of the circuit court's legal determinations leads to the inescapable conclusion that the circuit court clearly erred, as a matter of law, in directing that a matter be arbitrated[.]" Syl. Pt. 4, in part, *McGraw v. Amer. Tobacco Co.*, 224 W.Va. 211, 681 S.E.2d 96 (2009). With this standard in mind, we proceed to consider the parties' arguments.[9]

---

[9]The Cabot defendants contend that the circuit court's order was a ruling on their motion for partial summary judgment; therefore, this Court should apply the de novo standard of review applicable to summary judgment rulings. Although the circuit court's order contains findings of fact and conclusions of law, there is no indication that the court was ruling on the motion for partial summary judgment, nor does the order address all of the issues upon which the Cabot defendants sought partial summary judgment. Moreover, the circuit court's order contains language indicating at least a partial reconsideration of its order denying the Cabot defendants' motion to dismiss:

> The essence of defendants' "Motion to Dismiss" was that this Court had no jurisdiction because of the existence of an arbitration agreement. This Court

### III. Discussion

In the Cabot defendants' appeal (No. 16-0904), they assign error in the circuit court's application of an exception to res judicata that has never before been recognized by this Court and to the circuit court's direction to the arbitrators on the issues to be decided, the rulings to be followed, and the law to be applied. In Beaver's appeal (No. 16-0905), it assigns error in the circuit court's referral of its claims to arbitration, arguing that arbitration had been waived.[10] The Cabot defendants and Beaver assert that the circuit court erred in referring to arbitration those claims that arise under the 1977 Agreement, as that agreement does not contain an arbitration provision. We address these issues below.

### A. Whether arbitration was waived

The parties agree that there is a valid, enforceable arbitration agreement in the 1929 Lease; however, Beaver argues that the Cabot defendants waived the right to arbitration. Noting that this case has been pending in the circuit court for more than eight years without the Cabot defendants forcing the arbitration issue, Beaver asserts that the Cabot defendants acted inconsistently with the intent to seek arbitration and made only passing references to arbitration during the proceedings below, all to Beaver's prejudice. In response, the Cabot defendants argue that the circuit court never ruled on the allegation of waiver and, therefore, the issue is not properly before this Court. They add, however, that if this Court considers

> will ultimately agree in part and disagree in part. . . . To the extent the issues raised in "Plaintiff's Complaint and Petition for Injunctive Relief" are subject to the arbitration agreement, this Court agrees with the defendants at least to the extent that this case must be stayed and the issues referred to arbitration.

Beaver urges application of the standard of review set forth in syllabus point two of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997), which provides that the final order and ultimate disposition are reviewed under an abuse of discretion standard, factual findings under a clearly erroneous standard, and questions of law are reviewed de novo.

[10]Beaver also requests in its appellate brief that "this matter be referred to the Business Court Division for further development." Under West Virginia Trial Court Rule 29.06, a party may seek to refer a matter to the business court by filing a motion in this Court. Such motions are ruled upon by the Chief Justice. W.Va. T.C.R. 29.06(c)(3). No such motion has been filed with this Court.

Beaver's waiver argument, they did not waive the right to arbitration, citing the numerous times the issue of arbitration was raised below.

A review of the record demonstrates that the issue of waiver was raised multiple times below, including during hearings before the circuit court.[11]  Consequently, we are impelled to view the circuit court's referral of the parties to arbitration as necessarily being an implicit determination by the circuit court that arbitration had not been waived.  *See* Syl. Pt. 4, *Williams v. Tucker*, 239 W.Va. 395, 801 S.E.2d 273 (2017) ("In the absence of an agreement to the contrary, waiver of a contractual right to arbitration is a threshold question of enforceability to be determined by a court, not an arbitrator.").

We recently addressed the issue of a waiver of the right to arbitration, holding that

> [t]he right to arbitration, like any other contract right, can be waived. To establish waiver of a contractual right to arbitrate, the party asserting waiver must show that the waiving party knew of the right to arbitrate and either expressly waived the right, or, based on the totality of the circumstances, acted inconsistently with the right to arbitrate through acts or language. There is no requirement that the party asserting waiver show prejudice or detrimental reliance.

Syl. Pt. 6, *Parsons v. Halliburton Energy Serv. Inc.*, 237 W.Va. 138, 785 S.E.2d 844 (2016). There is no indication either in the record or in the parties' arguments that the Cabot defendants expressly waived the right to arbitration; therefore, we look to the totality of the circumstances.  *Id.*

The record reflects the Cabot defendants sought to enforce the arbitration clause of the 1929 Lease, including through their arguments made in relation to their motion to dismiss in which they asserted rights under the arbitration agreement and sought a "dismissal of all claims that were previously brought or should have been brought in the final and binding arbitration."  The Cabot defendants again raised arbitration in their motion for clarification or  relief from the denial of their motion to dismiss in which they sought, inter alia, to compel arbitration.  Arbitration was again raised during the hearing held on the

---

[11]The circuit court stated in the order being appealed that Cabot had, "at appropriate times and as part of motions, answers, and responses, argued that the existence of an arbitration agreement between the parties is binding and arbitration is mandatory."

Cabot defendants' motion for clarification or relief,[12] and it was raised as an affirmative defense in their answer to the complaint.

Although Beaver has cited several cases regarding waiver in support of its position that arbitration has been waived, we agree with the Cabot defendants that these cases are readily distinguishable. Certainly, none involve a similar situation where "the party who initially sought arbitration seeks to relitigate the issues it arbitrated[,]" as the Cabot defendants argue. Instead, the Cabot defendants were compelled to seek enforcement of the arbitration agreement in the 1929 Lease, which rendered the 2004 arbitration award final and binding. Likewise, we are persuaded by the Cabot defendants' argument that the facts of this case "present a chilling scenario where . . . a defending party, who accepted the bargained-for finality [of the prior arbitration], could be deemed to have waived all rights under the agreement . . . by virtue of its actions in defending the claims in circuit court to enforce the final arbitration[.]" While we do not discount Beaver's concerns regarding the passage of time in this matter and have considered the law they have cited in that regard, this Court has previously held that before we will find there has been a waiver, "all of the attendant facts, taken together, must amount to an intentional relinquishment of a known right." *Id.* at 142, 785 S.E.2d at 848, syl. pt. 2, in part. Our consideration of the totality of the rather unique circumstances of this case, as well as the strong federal and state public policy favoring arbitration,[13] informs our decision that the Cabot defendants did not waive arbitration.

## B. The doctrine of res judicata

The Cabot defendants argue that the 2004 arbitration award, which determined the issue of how royalties are to be calculated under the 1929 Lease, was final and binding; that

---

[12]As indicated above, the Cabot defendants stated in their motion for clarification or relief that if the circuit court did not relieve them of the effect of the denial of their motion to dismiss and compel arbitration, they would seek a writ of prohibition from this Court. Because the circuit court never ruled on this motion, the Cabot defendants state that they continued to comply with the circuit court's scheduling order while awaiting a decision on their motion.

[13]*See Amer. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996) ("Because of the strong federal policy favoring arbitration, . . . we will not lightly infer the circumstances constituting waiver.")

11

the doctrine of res judicata[14] precluded Beaver's current claim; and that the time for challenging the arbitration award had long passed. While Beaver agrees that the doctrine of res judicata applies to arbitration awards,[15] it argues that the panel's award was not prospective; that the arbitration panel relied upon *Wellman*, 210 W.Va. 200, 557 S.E.2d 254, in rendering its award;[16] that the more recent decision of *Tawney*, 219 W.Va. 266, 633 S.E.2d 22, should be applied to the royalty claim asserted in Count II of its complaint; and that an

---

[14] *See* Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997) ("Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.").

[15] *See Boomer Coal & Coke Co. v. Osenton*, 101 W.Va. 683, 693, 133 S.E. 381, 385 (1926) (internal citation omitted) ("The courts of this country have adhered with great steadiness to the general rule that awards will not be set aside for errors of law or fact on the part of the arbitrators. Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy.").

[16] Beaver argues that the arbitration panel applied *Wellman* and that *Tawney* represents a change in the law that should overcome the res judicata effect of the 2004 arbitration award. Critically, a review of the 2004 arbitration award reveals that it was not based upon *Wellman*. While the panel discussed *Wellman*, as well as other cases, it clearly stated that *Wellman* was "expressly limited to 'proceeds' leases, excluded 'value' leases from the discussion and, even as to 'proceeds' leases, failed to resolve the issue of the deductibility of 'post-production' expenses, at least with respect to 'mouth of the well' leases." Because the 1929 Lease is not a proceeds lease, the panel ultimately found there was no "controlling West Virginia decision" and that it was reaching its decision on the deduction of post-production expenses from royalties by applying "the language of the lease[] as written." Further, *Wellman* has never been reversed and continues to be the basis for the law in this state on the deduction of post-production costs. *See Leggett v. EQT Prod. Co.,* 239 W.Va. 264, __, 800 S.E.2d 850, 858 (2017) ("[I]t is *Wellman* which forms the foundation of the current state of West Virginia's law on deduction of post-production costs.").

12

intervening change in the law is an exception to the doctrine of res judicata. The circuit court agreed with Beaver and applied an intervening law exception to res judicata to find that the 2004 arbitration award regarding the calculation of royalty under the 1929 Lease was not binding upon Beaver's current royalty claims.

Although Beaver has very recently represented to this Court, both in a written motion and during oral argument, that it was withdrawing its royalty claim and now agrees that the 2004 arbitration award is binding upon it,[17] we take this opportunity to emphasize that this Court has never adopted an intervening law exception to res judicata. Indeed, we have long recognized the importance of the finality of decisions. As we explained in *Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W.Va. 698, 127 S.E. 644 (1925), the doctrine of res judicata "is founded upon two maxims of the law, one of which is that 'a man should not be twice vexed for the same cause,' the other that 'it is for the public good that there be an end of litigation.'" *Id.* at 702, 127 S.E. at 646 (citation omitted). Espousing a similar view, the United States Supreme Court explained that it

> has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931). We have stressed that "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts. . . ." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917).

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981).

Bearing in mind the policies underpinning res judicata, we also observe that the 1929 Lease is a twenty-page, bargained-for agreement between two commercially sophisticated parties that contains an arbitration provision, which provides that the arbitrators' decision "*shall be final and conclusive and binding upon the parties hereto*, with no right of appeal."

---

[17]Because Beaver is withdrawing its underpayment of royalty claim, we need not address the Cabot defendants' argument that Beaver's claim would require vacating the 2004 arbitration award, which is precluded by 9 United States Code § 10 (setting forth the grounds for seeking to vacate arbitration award), and Beaver's countervailing argument that it did not seek to vacate or modify the 2004 arbitration award.

(Emphasis added). Because the parties clearly and expressly agreed to the finality and conclusiveness of the 2004 arbitration award, and because West Virginia has not recognized an intervening law exception to res judicata, we reverse the circuit court's order to the extent it applied an intervening law exception to res judicata in this matter.

### C. The circuit court's referral of all claims to arbitration

In its August 25, 2016, order, the circuit court referred all of Beaver's claims to arbitration. It is clear, however, that all claims cannot be referred to arbitration. We agree with the parties that the claims arising under the 1977 Agreement are not subject to arbitration because there is no applicable arbitration provision in that agreement, nor does it incorporate the 1929 Lease by reference. While it may seem counterintuitive to split claims for resolution, as we previously explained, "[t]he Federal Arbitration Act, 9 U.S.C. § 2, requires that if a lawsuit presents multiple claims, some subject to an arbitration agreement and some not, the former claims must be sent to arbitration—even if this will lead to piecemeal litigation." Syl. Pt. 9, in part, *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012).

Bearing this legal premise in mind, we reverse the circuit court's referral to arbitration of those claims set forth in Beaver's complaint that solely arise under the 1977 Agreement. Those claims are Count III (breach of contract claim under the 1977 Agreement) and Count VII (declaratory judgment for forfeiture of 1977 Agreement), as well as Counts V (trespass against Cranberry) and VI (ejectment against Cranberry) to the extent those counts pertain to Cranberry's alleged wrongful operation of the licensed pipeline through Cabot's allegedly illegal assignment of the 1977 Agreement to Cranberry. Because Counts V and VI also involve Cranberry's alleged wrongful operation of the storage field and lease pipelines through Cabot's allegedly illegal assignment to Cranberry of certain rights under the 1929 Lease, those claims must be arbitrated in accordance with the arbitration provision in the 1929 Lease,[18] and we affirm the circuit court's referral to arbitration in that specific regard.[19]

---

[18]The 1929 Lease provides that "[a]ll terms, provisions, conditions, limitations, covenants, stipulations and agreements of this lease shall inure to the benefit of and be binding upon the successors, assigns and lessees of the parties hereto, respectively."

[19]We recognize that this could lead to inconsistent results on Beaver's ejectment and trespass claims, but the absence of an applicable arbitration provision in the 1977 Agreement compels this outcome.

14

Beaver's complaint also contains claims that pertain solely to the 1929 Lease Agreement, *i.e.*, Count I (enforcement of the 2004 arbitration award), Count II (breach of contract for underpayment of royalty),[20] and Count IV (declaratory judgment for forfeiture of the 1929 Lease for various lease violations). We affirm the circuit court's referral of those particular claims to arbitration.

## D. The circuit court's directions to the arbitration panel

In its order referring the parties to arbitration, the circuit court stated that the "arbitrators will be required to recognize the existence of the change in law identified in the *Tawny* [sic] case and to the extent the arbitrators are required to determine the relative positions of the parties in this case, if *Tawny* [sic] is relevant to the issues to be resolved by the arbitrators then *Tawny* [sic] will trump *Wellman*."[21] The circuit court further stated that "Counts I, III, IV, V, VI and VII are new issues and are subject to arbitration without the necessity of an analysis of the *res judicata* claims" and that the "arbitration herein ordered shall be conducted pursuant to the requirements of [] [the 1929 Lease] and the rulings in this order." The Cabot defendants argue that the circuit court exceeded the scope of its authority. We agree.

Through its pronouncements, the circuit court did precisely what we found to have been error in *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010). In *TD Ameritrade*, the circuit court referred the parties to arbitration but also reached conclusions of law, ordering the arbitrator to "'follow the directives of this Court.'" *Id.* at 253, 692 S.E.2d at 296. We explained that "the severability doctrine . . . permits trial courts to address challenges to an arbitration clause but reserves to arbitrators challenges to the contract as a whole." *Id.* at 254, 692 S.E.2d at 297. After observing that the plaintiff had "skirt[ed]" the issue of whether the "trial court [had] overstepped clearly-demarcated boundaries by ruling on the merits of the controversy and directing the arbitrator to observe those rulings,"[22] we held that

---

[20]As indicated above, Beaver has represented both in writing and during oral argument that it will no longer pursue its royalty claim against Cabot.

[21]*See supra* note 16.

[22]*T.D. Ameritrade*, 225 W.Va. at 254, 692 S.E.2d at 297.

15

[w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

225 W.Va. at 251, 692 S.E.2d at 294, syl. pt. 2. We emphasized that "[t]he law is well-settled 'that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" *Id.* at 253, 692 S.E.2d at 296 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). As in *TD Ameritrade*, we find that the circuit court's "foray into matters reserved for arbitral resolution was clearly improper." 225 W.Va. at 255, 692 S.E.2d at 298. Accordingly, we reverse that portion of the circuit court's order that directs the arbitrators on the law to be applied and the circuit court's rulings to be followed.

## IV. Conclusion

For the reasons set forth above, the circuit court's August 25, 2016, order is affirmed, in part, reversed, in part, and this case is remanded for further proceedings consistent with this opinion. To the extent this Court has affirmed, in part, the circuit court's referral to arbitration, those particular claims are referred to arbitration.

Affirmed, in part, Reversed, in part, and Remanded, in part.

**ISSUED: November 9, 2017**

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

16