# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2020 Term**

_____

No. 20-0007

_____

**FILED**
**November 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA EX REL. TROY GROUP, INC., A DELAWARE CORPORATION; BARIS VURAL; GEORGANNE ICKLER; AND AIMEE ORUM,**
Petitioners

**V.**

**THE HONORABLE JUDGE DAVID J. SIMS, JUDGE OF THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA, AND NAKITA WILLIS,**
Respondents

_____

## PETITION FOR WRIT OF PROHIBITION

## WRIT GRANTED

_____

**Submitted: September 2, 2020**
**Filed: November 20, 2020**

Brian J. Moore
Kelsey Haught Parsons
Dinsmore & Shohl LLP
Charleston, West Virginia
Attorneys for the Petitioners

Robert C. James
Jordan V. Palmer
Flaherty Sensabaugh Bonasso PLLC
Wheeling, West Virginia
Attorney for the Respondent Nakita Willis

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICES WORKMAN and HUTCHISON dissent and reserve the right to file dissenting opinions.**

**SYLLABUS BY THE COURT**

1.      "'Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari.'  Syllabus Point 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953)."  Syllabus point 1, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330 (2018).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law,

i

should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.     "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)." Syllabus point 11, *State v. Wasanyi*, 241 W. Va. 220, 821 S.E.2d 1 (2018).

4.     "'When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.' Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010)." Syllabus point 3, *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 810 S.E.2d 286 (2018).

**Jenkins, Justice:**

This case was brought as a petition for a writ of prohibition under the original jurisdiction of this Court by Petitioners, TROY Group, Inc., a Delaware Corporation ("TROY"); Baris Vural ("Mr. Vural"); Georganne Ickler ("Ms. Ickler"); and Aimee Orum ("Ms. Orum") (collectively "Petitioners"). In this proceeding, Petitioners seek to have this Court prohibit the Circuit Court of Ohio County from enforcing its order denying their motion to dismiss or, in the alternative, to compel arbitration ("motion" or "motion to dismiss/compel arbitration"). In denying Petitioners' motion, the circuit court concluded that "significant and troubling questions exist with regard to the authenticity of the agreement produced by [Petitioners]." Consequently, the circuit court found that the arbitration agreement put forth by Petitioners could not be authenticated and denied their motion to dismiss/compel arbitration. After considering the briefs and record submitted, oral arguments presented by the parties, and the relevant law, we conclude that the circuit court erred in finding that the arbitration agreement put forth by Petitioners was not authentic. For this reason, we grant the requested writ.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Respondent Nakita Willis ("Ms. Willis") was employed with TROY from March 24, 2004, until September 24, 2018. After her employment with TROY ended, Ms. Willis filed a lawsuit in Ohio County alleging wrongful and discriminatory discharge based on race discrimination, gender discrimination, and age discrimination; wrongful and

1

retaliatory constructive discharge; violation of the Wage Payment and Collection Act; and the tort of outrage. Petitioners subsequently filed an answer, which asserted the affirmative defense that this matter was "subject to a valid and binding arbitration agreement." While this matter was pending, TROY produced a "Mutual Agreement to Arbitrate Claims" ("arbitration agreement") with Ms. Willis' signature on it. Pursuant to the produced arbitration agreement, Ms. Willis agreed not to litigate her employment-related claims in court, but instead agreed to submit such disputes to binding arbitration. It is undisputed that Ms. Willis' current claims are covered under the language of the arbitration agreement; thus, if the agreement is found to be valid and enforceable, she will be required to arbitrate her claims.

On May 24, 2019, Petitioners filed their motion to dismiss/compel arbitration and their memorandum in support thereof. Petitioners asserted that, at the time Ms. Willis was hired, she executed an arbitration agreement "in which she promised to submit any employment-related claims to binding arbitration[.]" Petitioners further contended that Ms. Willis' claims were subject to the arbitration agreement because (1) a dispute exists between Petitioners and Ms. Willis; (2) the parties have a written agreement (which was attached to the motion and memorandum supporting the same), and Ms. Willis' claims fall within the scope of the arbitration agreement; (3) the transactions in question relate to interstate commerce; and (4) Ms. Willis failed to arbitrate the dispute. Petitioners argued that the arbitration agreement is "a valid, enforceable contract supported by consideration" and that the agreement is conscionable.

2

In response, Ms. Willis opposed the Petitioners' motion arguing that (1) there was no consideration to give effect to the arbitration agreement; (2) Petitioners had waived their right to arbitrate by appearing in and preliminarily participating in the circuit court case; and (3) Petitioners were estopped from enforcing the arbitration agreement because they invited participation in certain discovery to which they would not have been entitled in an arbitration. Furthermore, in the event that the circuit court rejected these grounds, "[Ms. Willis] ask[ed] the [circuit court], in the alternative, to allow discovery on the issue of arbitration" because there were issues surrounding the creation and execution of the agreement. Ms. Willis attached an affidavit to her response indicating that she did not remember ever seeing or signing the agreement prior to this lawsuit. The circuit court held a hearing on the motion on July 18, 2019.[1] Following the hearing, the circuit court ordered that the parties would have ninety days to conduct discovery on any issues related to the arbitration agreement and the pending motion to dismiss/compel arbitration.

During this discovery period, TROY responded to a request by Ms. Willis to produce an original arbitration agreement. Specifically, TROY indicated that "it has already produced an original version" and that there is "no 'wet ink' version of the document as TROY [] is paperless and documents are maintained in electronic / PDF format." Moreover, the parties engaged in written discovery, which revealed other

---

[1] We note that no transcript of the July 18, 2019 hearing has been provided in the appendix in this matter.

employees' arbitration agreements, and Ms. Willis undertook a West Virginia Rule of Civil Procedure 30(b)(7) deposition of TROY corporate representative Ms. Orum. Ms. Orum testified that she was not employed with TROY when Ms. Willis began her employment. However, she stated that it is the typical practice of TROY to present the agreement to all employees in person or via email as part of the new hire paperwork after acceptance of a position and typically within two weeks prior to the employee's start date. Moreover, discovery revealed that, in 2016, TROY began a paperless initiative and all existing personnel files, including Ms. Willis', were scanned into PDF[2] format for electronic storage. Once Ms. Willis' file was scanned into the electronic system, the paper copy was shredded by a third-party vendor.

After the additional discovery was conducted, Petitioners filed a supplemental memorandum in support of their motion to dismiss or, in the alternative, compel arbitration. Petitioners contended that Ms. Willis failed to challenge whether the claims she made were covered by the arbitration agreement and that she also failed to challenge in any way the conscionability of the agreement. Petitioners further asserted that the arbitration agreement was presumptively valid and that Ms. Willis did not overcome that presumption, they had not waived their right to arbitration, and they were not estopped

---

[2] PDF stands for Portable Document Format. Furthermore, according to Merriam-Webster's Dictionary, "pdf" or "PDF" is defined as "a computer file format for the transmission of a multimedia document that is not intended to be edited further and appears unaltered in most computer environments." Merriam–Webster, *https://www.merriam-webster.com/dictionary/pdf* (last visited Nov. 18, 2020).

from seeking arbitration. In turn, Ms. Willis also filed a supplemental response in opposition. In her response, Ms. Willis confusingly asserted that the arbitration agreement is not admissible because it is a duplicate, rather than an original; that she disputed the authenticity of the signature on the document; and that the circumstances surrounding other arbitration agreements executed in the same year of 2004 had "irregularities." Furthermore, she attached a second affidavit that reiterated her prior statements and added that she specifically denied signing the arbitration agreement and that "the apparent signature on it is not authentic and was not put on the document by [her] and/or with [her] knowledge and consent."

Ms. Willis then moved to strike the confidentiality designation of the other non-party employees' arbitration agreements that had been produced; however, the circuit court denied the motion concluding that Ms. Willis failed to demonstrate why the relief requested should be granted. In its November 18, 2019 order, the circuit court found that "only [Ms. Willis'] arbitration agreement is relevant in this matter." A few days later, on December 5, 2019, based in large part on the other employees' agreements—despite its previous ruling that the only relevant agreement is Ms. Willis'—and the details in the supplemental briefs, the circuit court denied the motion to dismiss/compel arbitration. Specifically, the circuit court found that "significant and troubling questions exist with regard to the authenticity of the agreement produced by [TROY.]" Petitioners then filed the instant petition for writ of prohibition on January 6, 2020, seeking to prevent

enforcement of the circuit court's December 5, 2019 order. We now grant the requested writ.

## II.

## STANDARD FOR ISSUANCE OF WRIT

TROY comes to this Court seeking a writ of prohibition to prevent the circuit court from enforcing an order that denied its motion to dismiss/compel arbitration. With respect to the extraordinary remedy of a writ of prohibition, this Court has explained that

> "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

Syl. pt. 1, *State ex rel. Franklin v. Tatterson*, 241 W. Va. 241, 821 S.E.2d 330 (2018). "We have, however, observed that '[a] petition for a writ of prohibition is an appropriate method to obtain review by this Court of a circuit court's decision to deny or compel arbitration.' *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 492, 729 S.E.2d 808, 814 (2012)." *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W. Va. 341, 348, 752 S.E.2d 372, 379 (2013).

Furthermore, in Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court has exceeded its legitimate authority:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Additionally, "'[i]n determining the third factor, the existence of clear error as a matter of law, we will employ a *de novo* standard of review, as in matters in which purely legal issues are at issue.' *State ex rel. Gessler v. Mazzone,* 212 W. Va. 368, 372, 572 S.E.2d 891, 895 (2002)." *State ex rel. Nelson v. Frye*, 221 W. Va. 391, 395, 655 S.E.2d 137, 141 (2007) (per curiam). Moreover, we note that "'[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998)." Syl. pt. 11, *State v. Wasanyi*, 241 W. Va. 220, 821 S.E.2d 1 (2018). Finally,

in addressing a motion to compel arbitration in the context of a civil action, it is for the court where the action is pending to decide in the first instance as a matter of law whether a valid and enforceable arbitration agreement exists between the parties. *See* Syllabus Points 1 and 2, *Art's Flower Shop, Inc. v. C & P Telephone Co.*, 186 W. Va. 613, 413 S.E.2d 670

7

(1991).     Thus   we   review   the   circuit   court's   legal determinations *de novo*.

*State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 555-56, 567 S.E.2d 265, 271-72 (2002).

With these standards in mind, we now turn to the parties' respective arguments.

## III.

## DISCUSSION

The single issue presented in this proceeding in prohibition involves whether the circuit court erred in denying Petitioners' motion to dismiss/compel arbitration. Specifically, Petitioners assert that the circuit court erred in three ways in this regard: (1) Ms. Willis' arbitration agreement is the only relevant agreement, not any other employees' agreements; (2) neither a "wet ink" original nor signature of a TROY representative is necessary for a valid arbitration agreement; and (3) they presented a written arbitration agreement signed by Ms. Willis, and Ms. Willis has not overcome the presumption that the arbitration agreement is valid.

In response, Ms. Willis contends that this case involves only an evidentiary ruling on the authenticity of a document, which is subject to an abuse of discretion standard, and that a simple abuse of discretion is not appropriate for a writ of prohibition. Ms. Willis further asserts that the Petitioners have failed to articulate why the circuit court should have reached a different conclusion. In particular, Ms. Willis argues that (1) the circuit court was free to consider the other employees' arbitration agreements despite its previous ruling

that the only relevant document was Ms. Willis' arbitration agreement; (2) Petitioners failed to present an original document and could not authenticate the duplicate; (3) there is no presumption of validity of the arbitration agreement, and, even if such presumption exists, the records defeats such a presumption; and (4) Petitioners are unable to authenticate the arbitration agreement. We do not agree.

This Court consistently has held that,

> "[w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

Syl. pt. 3, *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 810 S.E.2d 286 (2018). *See also* Syl. pt. 4, *Golden Eagle Res., II, L.L.C. v. Willow Run Energy, L.L.C.*, 242 W. Va. 372, 836 S.E.2d 23 (2019) ("When a trial court is required to rule upon a motion to compel or stay arbitration, the West Virginia Revised Uniform Arbitration Act, West Virginia Code § 55-10-8(b) (2015), limits the authority of the trial court to determining whether a litigant has established: (1) the existence of a valid, enforceable agreement to arbitrate between the parties; and (2) that the parties' controversy falls within the substantive scope of that agreement to arbitrate."). Accordingly, in this matter, the circuit court had the authority to determine the existence of a valid arbitration agreement.

9

TROY asserts that it presented a written arbitration agreement containing Ms. Willis' signature to the circuit court thereby making a prima facie showing of the existence of an agreement to arbitrate and that Ms. Willis then failed to overcome the presumption of its validity. In support of this contention, TROY relies on this Court's recent decision in *Employee Resource Group, LLC v. Collins*, No. 18-0007, 2019 WL 2338500, at \*2 (W. Va. June 3, 2019) (memorandum decision). In *Collins*, "[t]he determinative issue before the Court [wa]s whether the circuit court erred in refusing to enforce the Arbitration Agreement based upon its determination that the agreement was not signed by respondent." *Collins*, 2019 WL 2338500, at \*5. This Court began its analysis by setting forth the general burden of proof that must be met by a party seeking to enforce an arbitration agreement in Kentucky. *Id.* Specifically, we stated that,

> [w]hile there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004). *A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ]to arbitrate." Id.*
>
> *MHC Kenworth Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (emphasis added).

*Id.* Accordingly, we found that

> the record unequivocally contain[ed] a digitally signed copy of the Arbitration Agreement produced by petitioners during discovery before the circuit court. Thus, the burden shifted to [the] respondent. [The r]espondent argued that[,] although the agreement was digitally signed[,] it was not her signature, rather it was a "pre-stamped" signature.

10

*Id.* Ultimately, applying the above law to the facts of the case, we found that the petitioners "did produce a signed Arbitration Agreement and met their prima facie burden. It was respondent who failed to produce sufficient evidence to overcome it. The circuit court should have referred the case to arbitration and erred when it failed to [do] so." *Id.* at *6.

While we recognize that this Court's decision in *Collins* was decided pursuant to Kentucky law rather than West Virginia law, in other circumstances we have found the party challenging the arbitration provision bears the burden. *See, e.g.*, *State ex rel. Wells v. Matish*, 215 W. Va. 686, 692, 600 S.E.2d 583, 589 (2004) (per curiam) (observing that "the burden of proving excessive costs is upon the party challenging the arbitration provision."); Syl. pt. 4, *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 567 S.E.2d 265 (2002) (same). Furthermore, this same or a similar general burden of proof has been required of a party seeking to enforce an arbitration agreement in other jurisdictions. *See, e.g.*, *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) ("The party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement "in issue."' *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (summary order). . . . Subsequently, the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.' *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.—Alabama v. Randolph*, 531 U.S. 79, 91-92, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000))."); *Locklear Auto. Grp., Inc. v. Hubbard*, 252 So. 3d 67, 91-92 (Ala.

11

2017) ("It is true that, 'once a moving party has satisfied its burden of production by making *a prima facie showing* that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce,' the burden shifts to the nonmoving party to show otherwise. It is likewise true that this Court has said that, '[i]f th[e nonmoving] party presents no evidence in opposition to *a properly supported motion* to compel arbitration, then the trial court should grant the motion to compel arbitration.' . . . As we have otherwise recently expressed in another case in which the party opposing arbitration failed to present evidence in the trial court: '[U]nless *on its face* the arbitration provision is not valid or does not apply to the dispute in question, the trial court's decision to deny the motion[] to compel arbitration was erroneous.'" (internal quotations and citations omitted)); *Kindred Nursing Centers Ltd. P'ship v. Chrzanowski*, 791 S.E.2d 601, 605 (Ga. 2016) ("Here, Kindred Nursing Centers produced the ADR Agreement, which Jeanne signed. Accordingly, they established a prima facie case with regard to whether Jeanne entered into an enforceable contract. *See* OCGA § 13–3–1. The burden of proof then shifted to the Chrzanowskis, as the party challenging that agreement, to show that Jeanne lacked the capacity to enter into the agreement.").

Furthermore, the burden of establishing prima facie evidence of an agreement to arbitrate is a light one. "A party 'me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ] to arbitrate.'" *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004). "This does not require

12

the movant to show the 'agreement would be *enforceable*, merely that one existed.'" *Chang v. United Healthcare*, No. 19-CV-3529 (RA), 2020 WL 1140701, at \*3 (S.D.N.Y. Mar. 9, 2020) (quoting *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016)).

In the instant matter in prohibition, in the circuit court, Petitioners met their initial burden of proving the existence of an agreement to arbitrate by producing, as an attachment to their motion to dismiss/compel arbitration, a written copy of the arbitration agreement containing Ms. Willis' signature. Ms. Willis then challenged the admissibility and authenticity of the arbitration agreement and the authenticity of her signature under the West Virginia Rules of Evidence.

Pursuant to West Virginia Rule of Evidence 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a state statute provides otherwise." However, West Virginia Rule of Evidence 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."[3] Furthermore, West Virginia Rule of Evidence 1004 provides, in relevant part,

---

[3] Federal Rule of Evidence 1003 is identical to the West Virginia Rule of Evidence 1003. At least one federal court has interpreted this Rule as follows:

> The party opposing the introduction of a duplicate has the burden of demonstrating "*a genuine issue* as to the authenticity of the unintroduced original, *or as to the trustworthiness of the*

that "[a]n original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: *(a) Originals lost or destroyed.—* All the originals are lost or destroyed, and not by the proponent acting in bad faith[.]" Moreover, West Virginia Rule of Evidence 901 provides that "*(a) In general.—* To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Additionally, Rule 901 gives certain examples, but not a complete list of evidence that satisfies the requirement. *Id.* These examples include, but are not limited to: (1) testimony of a witness with knowledge that an item is what it is claimed to be; (2) nonexpert opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation; and (3) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances. *Id.* As such, an original is not always required and there are numerous ways to authenticate a document and/or signature.

---

*duplicate*, or as to the fairness of substituting the duplicate for the original." *Chang An–Lo,* 851 F.2d at 557 (quoting *United States v. Georgalis,* 631 F.2d 1199, 1205 (5th Cir.1980)); *see also Colormaster Printing Ink Co. v. S.S. ASIAFREIGHTER,* No. 75 Civ. 5204, et al. (JMC), 1991 WL 60413, at *3 (S.D.N.Y. April 9, 1991). . . . [S]ee *Colormaster*, 1991 WL 60413, at *3 ("[M]ere speculation is not sufficient to raise a showing of a genuine issue as to authenticity or unfairness.").

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293(JFB)(SMG), 2007 WL 74304, at *4 (E.D.N.Y. Jan. 8, 2007) (emphasis added).

In the matter *sub judice*, we do not have the "wet ink" original document. In 2016, two years prior to the initiation of the underlying lawsuit, TROY made the company decision to convert all employee personnel files to electronic format in accordance with a paperless policy initiative. As a part of this initiative, TROY started converting the personnel files in December 2016, beginning with the then-current employees' files, which included Ms. Willis' personnel file. After Ms. Willis' personnel file was converted into an electronic PDF file and uploaded to the human resources server, her paper personnel file was sent to a third party to be destroyed. There is no evidence or even allegation that this policy was created or Ms. Willis' paper personnel file was destroyed in bad faith. There also is no evidence or allegation that this initiative did not apply to every personnel file with TROY. Given these circumstances, the paper original was not required under Rule of Evidence 1004(a), as long as Ms. Willis has not demonstrated "*a genuine issue* as to the authenticity of the unintroduced original, *or as to the trustworthiness of the duplicate*, or as to the fairness of substituting the duplicate for the original." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293(JFB)(SMG), 2007 WL 74304, at *4 (E.D.N.Y. Jan. 8, 2007) (emphasis added).

The evidence that Ms. Willis puts forth in support of her contention that the PDF copy of the arbitration agreement bearing her signature is untrustworthy is minimal and unpersuasive. First, Ms. Willis submitted an initial sworn affidavit that claimed she did not recall ever seeing, being given, signing, or being asked to sign the arbitration agreement. "A mere assertion that one does not recall signing a document does not, by

itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated." *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015). Then, at the eleventh hour, Ms. Willis submitted a second affidavit in which, contrary to her initial affidavit, she denied that she signed the arbitration agreement. Because Ms. Willis has not given any explanation as to why her recollection suddenly was contrary to her initial sworn affidavit, we decline to consider this self-serving eleventh hour affidavit as evidence that her signature on the arbitration agreement is not authentic.[4]

Lastly, the record contains other employee arbitration agreements from 2004 and 2005 that Ms. Willis contends were suspicious and showed "irregularities." Ms. Willis' focus of the alleged "irregularities" concern whether a TROY representative backdated agreements and that one was signed on a Sunday when TROY was presumably not open for business. During her Rule 30(b)(7) deposition, Ms. Orum testified that she conducted periodic audits of employee personnel files. She could "only assume that [she]

---

[4] Ms. Willis additionally provided a sworn affidavit by George Parnieza, a former director of IT for TROY. We also find Mr. Parnieza's affidavit to be unpersuasive on the issue of whether Ms. Willis signed the arbitration agreement at issue in this case. In his affidavit, Mr. Parnieza could not recall seeing or signing an arbitration agreement, and claimed that he saw no such agreement when he examined his file in 2017. However, Mr. Parniez apparently also is involved in an employment dispute with TROY; accordingly, to the extent that arbitration may be an issue in his litigation, this affidavit also appears to be self-serving and insufficient to overcome TROY's prima facie establishment of an arbitration agreement between itself and Ms. Willis. Additionally, whether Mr. Parnieza signed his own agreement to arbitrate is not at issue here.

signed and dated previous [arbitration agreements] and added [her] title later on[.]" Ms. Willis does not contend that her arbitration agreement displays these similar irregularities—only that they allegedly appear on agreements formed proximate in time to hers and show suspicious conduct. Given that Ms. Willis has not connected those supposed irregularities to her own agreement, we fail to see how they are relevant to the issue of whether Ms. Willis actually signed the arbitration agreement at issue in this case. As the circuit court initially found, Ms. Willis' arbitration agreement is the only agreement that is relevant to this action. There has been no allegation that the signature that appears on the arbitration agreement does not belong to Ms. Willis. Instead, and without any supporting evidence, Ms. Willis suggests that her signature must have been copied from elsewhere and pasted onto the subject arbitration agreement. There simply is no evidence in the record to support this allegation. Accordingly, Ms. Willis failed to meet her burden.

On the other hand, TROY's Rule 30(b)(7) representative, Ms. Orum provided the following compelling information during her deposition in the underlying litigation which supports the authenticity of the document and the signature. Ms. Orum testified that in producing Ms. Willis' arbitration agreement, she retrieved it from the human resources server ("the server") in Ms. Willis' electronic personnel file. Only the director of IT and Ms. Orum have access to the server. Ms. Orum testified that her assistant has viewing access to certain folders and files within the server, but does not have any edit access. Ms. Orum stated that she does have edit access; however, she was not specific as to what exactly she could edit. For example, it is not clear whether Ms. Orum can edit

17

individual documents, such as PDF and Microsoft Word documents, or whether she meant that she has the ability only to add and/or delete server files. When asked about what metadata exists regarding Ms. Willis' arbitration agreement, Ms. Orum testified that the only metadata that could be produced with regard to this specific arbitration agreement because it was a PDF document was the date the document was scanned into the server and who scanned it. Ms. Willis' arbitration agreement was scanned into the server on December 21, 2016.[5] Ms. Orum stated that the entire employee file would have been scanned at that same time, both the new hire documents and subsequent personnel information. Ms. Orum explicitly testified that she does not have Adobe Professional or Adobe Illustrator on her system, but rather only Adobe Reader. Accordingly, this particular software does not allow an individual to cut and paste signatures between documents. Ms. Orum also denied having a printer that had cut and paste capabilities. Consequently, through this testimony, Ms. Orum confirmed that the arbitration agreement was scanned into the server in December 2016, two years prior to this litigation, and that she did not have any capability to "cut and paste" Ms. Willis' signature into the arbitration agreement.

Ms. Willis attempts to undercut the impact of Ms. Orum's testimony, arguing that Ms. Orum did not work at TROY when Ms. Willis was hired, and so, neither witnessed Ms. Willis sign her new hire documents, including the mutual agreement to arbitrate, nor

---

[5] Ms. Orum testified that she is able to ascertain the scan date because, on the server, the scan date is next to the file name in the folder.

signed those documents herself. However, Ms. Orum further testified that in examining Ms. Willis' mutual agreement to arbitrate, Ms. Orum is able to recognize Ms. Willis' signature "[b]y comparing it to other documents in her personnel file." She stated that she believes Ms. Willis signed the agreement, herself, because otherwise TROY would not have further "pursued her start[ing] date or her position."

Moreover, Ms. Orum provided testimony regarding the procedure at TROY as to how the mutual agreement to arbitrate was presented to employees. She testified that "[i]t's presented during – or just after an offer of employment and acceptance. It is either handed to the employee or sent via e-mail, depending on location and convenience factors." Moreover, Ms. Orum testified unequivocally that all employees are required to sign the mutual agreement to arbitrate, and, if they do not, TROY "do[es] not pursue employment." She further stated that all employees who began employment with TROY as of 2004 or later have signed the agreement to arbitrate. As such, considering the foregoing evidence and authorities, there is simply no evidence in the record to suggest that it is not Ms. Willis' signature on the parties' arbitration agreement and that the arbitration is not authentic as a whole.[6]

---

[6] Other courts have found similarly when presented with comparable facts and circumstances. *See Perez v. Ruby Tuesday, Inc.*, No. 6:16-CV-795, 2019 WL 355637, at \*4 (N.D.N.Y. Jan. 28, 2019) ("Upon review of the submissions, defendants have carried their burden of demonstrating that the parties agreed to arbitrate pursuant to the Agreement, a copy of which was electronically signed by Perez. . . . This is because Perez's refusal is made without the support of a shred of evidence that might cast doubt on the authenticity of the various exhibits marshaled by defendants in support of their contrary position. *See, e.g., Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015)

Therefore, the circuit court erred in finding that Petitioners were unable to authenticate the arbitration agreement and/or Ms. Willis' signature because Petitioners met their initial burden of demonstrating that an agreement to arbitrate exists. Petitioners produced testimony that they have had a company-wide policy since 2004 that every employee must sign an agreement to arbitrate, they have an electronic PDF copy of the paper original arbitration agreement, and that the signature on that PDF copy matches Ms. Willis' signature on other documents. Despite Ms. Willis' assertions to the contrary, she failed to meet her burden of demonstrating that the arbitration agreement was not authentic and that it was not her signature on that agreement. Consequently, we grant the requested writ of prohibition.[7]

---

(rejecting similar refusal to acknowledge electronic signature where '[n]othing in the record (other than [plaintiff's] bald assertion to the contrary in his opposition)' suggested it was invalid). Accordingly, Perez's self-serving refusal to acknowledge the fact of her signature on the document is insufficient to raise a genuine dispute of fact about this all-important threshold question." (internal quotations and citations omitted)); *Hurtt v. Del Frisco's Rest. Grp.*, No. CV N18C-05-201 SKR, 2019 WL 2516763, at *3, 6 (Del. Super. Ct. June 18, 2019) ("In lieu of providing direct evidence that her signature was fabricated, Hurtt raised certain suspicions about the signature as it appears on the Arbitration Agreement, and attempted to invalidate the Agreement on those bases. . . . Other than simply denying that she had signed the Arbitration Agreement, Hurtt has failed to provide any reliable evidence to demonstrate that she was not the signator on that Agreement. Hurtt attempted to raise some suspicions and concerns about the signature and the time of signing, but much of Hurtt's testimony and explanations on those points are inconsistent and do not reconcile with each other. Hence, the alleged suspicions do not constitute 'competent proof' that the Agreement was not signed by her.").

[7] Furthermore, we find that, despite Ms. Willis' characterization that this matter involves a simple abuse of discretion and is not appropriate for a writ of prohibition, under the specific facts of this case, a writ of prohibition is appropriate. This Court has, on very limited occasions, granted extraordinary relief in matters that involved evidentiary rulings and/or simple abuses of discretion based on the unique circumstances of the particular case. *See, e.g.*, *River Riders, Inc. v. Steptoe*, 223 W. Va. 240, 249, 672 S.E.2d

## IV.

## CONCLUSION

We find that the circuit court committed clear legal error in denying Petitioners' motion to dismiss or, in the alternative, to compel arbitration by finding the arbitration agreement was not authentic. Accordingly, we grant the requested writ of prohibition.

Writ granted.

---

376, 385 (2008) ("This Court has, on limited occasions, considered challenges from evidentiary rulings in unique circumstances where the matter at issue rose to a level of considerable importance and compelling urgency. In reviewing the claims asserted by Petitioners herein, which allege that the circuit court, by virtue of a motion *in limine,* made jurisdictional rulings that serve to have a significant and lasting negative impact on the question of liability for an important segment of business within this State, we find it appropriate to accept this matter for consideration at this stage in the proceedings." (footnote omitted)). Additionally, we recently have granted extraordinary relief through issuing a writ of prohibition relating to an evidentiary ruling in *State ex rel. Wade v. Hummel*, __ W. Va. __, __, 844 S.E.2d 443, 450 (2020), finding that "because the State has no right to appeal this issue, it has no other means to obtain relief from the circuit court's ruling." Therefore, Ms. Willis' assertion that an abuse of discretion is an automatic bar to prohibitory relief is not accurate.

The case *sub judice* involves whether the circuit court erred in failing to compel arbitration. This Court previously has found "that an order refusing to compel arbitration is effectively unreviewable on appeal. The result of such an order is litigation. The purpose of arbitration is to avoid litigation in favor of a quicker and less costly method of dispute resolution. Thus, a party who is required to wait until the conclusion of litigation to appeal the denial of arbitration has already borne the financial and temporal cost of such litigation and has, therefore, effectively lost, irreparably, the right to arbitration." *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 525, 745 S.E.2d 556, 563 (2013) (citations and quotations omitted). While Petitioners effectively had two ways to bring this issue to the attention of this Court, either via writ of prohibition or interlocutory appeal pursuant of the collateral order doctrine, *Front*, 231 W. Va. at 525, 745 S.E.2d at 563, we find through the necessity of judicial economy and that this issue is not correctable on appeal, under these limited facts, this matter is appropriate for a writ of prohibition.

21