Margaret TOPPINGS, et al., Plaintiffs,

v.

MERITECH MORTGAGE SERVICES, INC., et al., Defendants.

No. CIV. A. 2:00–1055.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 23, 2001.

Bren J. Pomponio, Daniel F. Hedges, Mountain State Justice, Inc., Charleston, WV, for Plaintiffs.

Bruce M. Jacobs, Marcy E. Aber, Spilman, Thomas & Battle, Charleston, WV, for Defendants Meritech Mortgage Services, Inc., Saxon Mortgage Inc., Chase Manhattan Bank, Chase Bank of Texas, NA.

W. Jack Stevens, Hamlin, WV, for Defendant Salmons Agency, Inc.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the joint motion to compel arbitration and dismiss or, in the alternative, to stay the case, filed by Defendants Chase Manhattan Bank and Saxon Mort-

**39.** Doc. # 27.

**40.** Doc. # 29.

gage. The Court **DENIES** the motion without prejudice.

## I. FACTUAL BACKGROUND

Plaintiffs Margaret and Roger Toppings are Lincoln County, West Virginia residents. Ms. Toppings is a sixty-five (65) year old woman who attained a fifth grade education. Her husband reached the seventh grade, but he cannot read, write, or understand written documents.

In October 1999 the Toppings were solicited with an ad placed by Defendant Platinum Capital Group for a home equity loan. The base loan APR was advertised at 7.9%, but it was not disclosed the loan would include a $36,000.00 balloon payment.

In November 1999, Defendant Salmons Agency, Inc. gave the Toppings sixty-four (64) pages of loan documents. When the Toppings asked someone to read and explain the papers to them, a Salmons' agent advised she knew nothing about the papers and that she did not know why the papers were sent to her. She further advised she did not have time to read the documents and told the Toppings to take the papers home and read them.

Ultimately, the Toppings signed the documents and obtained the loan from Defendant Platinum Capital Group, secured by a first lien deed of trust on real estate they owned. Platinum assigned all of its right, title and interest in the loan to Defendant Chase Manhattan Bank, as custodian for Defendant Saxon Mortgage, Inc., and its successors and assigns.

The Toppings filed an Amended Complaint based on the loan transaction, asserting claims for violations of the Truth in Lending Act and Regulation Z. They also filed a state action asserting purely state claims arising from the loan. Defendants, however, seek enforcement of an arbitration agreement (Agreement) contained in the loan documents and signed by the Toppings. To forestall arbitration, the Amended Complaint launches a frontal assault on the Agreement, asserting it (1) denies the Toppings' right to an impartial tribunal; (2) is lacking a mutuality of obligation; (3) contains unconscionable terms; and (4) contravenes public policy.[1] Based

---

1. The Toppings further assert the chosen arbitral organization, the National Arbitration Forum (NAF), lacks "the fundamental component of arbitration: that the arbitration be conducted by a neutral decision maker." (Resp. Mem. at 4.) Specifically, the Toppings assert:

[The NAF] is a creditor-friendly arbitration organization. Directors for the organization are former employees of lending institutions and members of the defense bar that have specialized in representing lenders in litigation against consumers. These directors exercise significant control and authority over the arbitration process at NAF. The list of arbitrators for NAF are typically secret, and only individuals designated by the creditor become arbitrators.

The arbitrators receive payment for their services based solely on the number of cases they handle. This system encourages arbitrators to rule in favor of the creditors in an attempt to garner future appointments from creditors, and in turn permits creditors to exercise significant influence over the arbitrators.

The NAF routinely solicits its business from the financial services industry and engages in inappropriate contacts with financial institutions. The solicitations do not hold NAF out as a neutral decision maker, but rather present arbitration with NAF as an opportunity for financial service institutions to limit the awards for consumers on valid claims brought against members of the financial service industry. NAF has indicated its rules provide preferential treatment for creditors by reducing "collection costs" and has touted "every award is limited to the amount claimed," thereby eliminating the possibility for punitive damages, even in circumstances where the financial institution is guilty of outrageous, abusive, and predatory lending conduct. Finally, NAF has marketed its rules as an opportunity for financial institutions to "improve their bottom line" in the battle against consumers and has encouraged the

on these common law and statutory defenses, the Toppings seek a declaration from the Court voiding the Agreement. The Toppings alternatively seek discovery to provide an appropriate factual record to resolve whether the parties entered a valid agreement to arbitrate.

## II. DISCUSSION

■] It is well-established that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 940 (4th Cir.1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Drews Distrib., Inc. v. Silicon Gaming, Inc.,* 245 F.3d 347, 349 (4th Cir. 2001). As the Supreme Court has stated, "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–27, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000).

■ Merely filing a motion to compel arbitration, however, does not result in automatic referral. Rather, "It [i]s for the court, not the arbitrator, to decide in the first instance whether [a] dispute [i]s to be resolved through arbitration." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also A.T. Massey Coal Co. v. Int'l Union,* 799 F.2d 142, 146 (4th Cir.1986) ("[W]hether there is a contract to arbitrate 'is undeniably an issue for judicial determination.'") (quoting

industry to include a clause in all its loan agreements that compels arbitration with the NAF.

*AT & T Techs.,* 475 U.S. at 649, 106 S.Ct. 1415). To discharge this duty, district courts are directed to conduct "'a limited review to ensure .. [1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement.'" *Hooters,* 173 F.3d at 938 (quoting *Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir.1997)).

One component of this "limited review" involves a determination of whether the contract is invalid or unenforceable on such "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. For example, the Supreme Court has held "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Saturn Distrib. Corp. v. Williams,* 905 F.2d 719, 727 (4th Cir.1990) ("Existing Virginia law can and should be applied to revoke any contract which results from fraud or the sort of overwhelming economic power which can render an agreement unconscionable.")

■ In order to discharge its obligation to assure there is a valid arbitration agreement, the Court agrees discovery is necessary on the Toppings' challenges to the Agreement. The Court believes additional factual development is warranted particularly, without limitation, on both the issues of unconscionability and the impartiality and other challenges to the NAF as the chosen arbitral forum. Both this Court and other judges in the District have taken a similar approach in like cases. *See, e.g.,*

*Id.* at 3–4 (citations omitted).

*Hodge v. Equifirst Corp.,* No. 2:00–0423, slip op. at 4–5 (S.D.W.Va. Jul. 31, 2000); *Montrosse v. Conseco Finance Serv. Corp.,* 5:00–0434, slip op. at 9 (S.D.W.Va. Dec. 20, 2000); *Kincaid v. Commercial Credit Corp.,* 2:98–0842, slip op. at 16 (S.D.W.Va. Nov. 16, 1999).

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendants' motion to compel arbitration and to dismiss or stay proceedings is **DENIED** without prejudice;

2. Any and all discovery relating to the validity of the Agreement shall be concluded by July 1, 2001. Defendants may renew their motion to compel and dismiss or stay no later than July 15, 2001, with response and reply in accordance with the Local Rules; and

3. The Scheduling Order is **VACATED.** Discovery will only be permitted at this time on the Counts of the Amended Complaint that specifically challenge the validity of the Agreement.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish it on the Court's website at http://www.wvsd.uscourts.gov/opinions/index.htm.