692 S.E.2d 293

**STATE of West Virginia ex rel.
TD AMERITRADE, INC.,
Petitioner,**

v.

**Honorable Tod J. KAUFMAN, Judge of
the Circuit Court of Kanawha
County, Respondent,**

and

**Bruce P. Conrad and Dan Salamie,
Respondents.**

No. 35125.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 26, 2010.

Decided March 5, 2010.

Ramonda C. Lyons, Mychal S. Schulz, Dinsmore & Shohl, Charleston, WV, for the Petitioner, TD Ameritrade, Inc.

William V. DePaulo, Law Office of William V. DePaulo, Charleston, WV, for Respondent, Bruce Conrad.

Richard F. Neely, Neely & Callaghan, Charleston, WV, for Respondent, Dan Salamie.

McHUGH, Justice:

Petitioner TD Ameritrade, Inc. ("Ameritrade") seeks a writ of prohibition to prevent the Circuit Court of Kanawha County from enforcing a portion of its ruling of May 28, 2009, through which the trial court referred the subject dispute to arbitration and further ordered the arbitrator to adopt its findings of fact and conclusions of law. As support for its request for extraordinary relief, Ameritrade contends that the trial court exceeded its powers by ruling on the merits of the underlying dispute in its referral order. Having carefully reviewed the arguments presented on this issue in conjunction with controlling law, we determine that the trial court committed error by addressing issues clearly subject to arbitration when issuing its referral order. Based on Petitioner's demonstration of the grounds necessary for the relief it seeks, we issue the requested writ of prohibition.

## I. Factual and Procedural Background

On November 14, 2008, Mr. Salamie filed a civil action against Bruce Conrad, an independent financial advisor and Ameritrade, a New York discount brokerage firm. Through the complaint, Mr. Salamie avers that he sustained financial loss due to Mr. Conrad's disregard of specific instructions regarding various investment holdings in four Ameritrade accounts.[1] Mr. Salamie alleged that Ameritrade was responsible under a theory of vicarious liability for Mr. Conrad's actions with regard to his account on the theory that Mr. Conrad was an account officer or registered representative of Ameritrade.

Mr. Salamie served his first set of discovery requests upon Petitioner concurrent with effecting service of process on Ameritrade. Seeking relief from its obligation to comply with the discovery requests, Ameritrade filed a motion for protective order and informed the trial court that it intended to file a motion to compel arbitration. Ameritrade subsequently filed such a motion, citing the inclusion of language in account documents executed by Mr. Salamie with regard to each of his Ameritrade investment accounts that requires arbitration of controversies.[2] As part of its motion to compel arbitration, Ameritrade requested that the trial court dismiss the litigation filed by Mr. Salamie or, alternatively, stay the litigation during the pendency of the arbitration.

Before the trial court addressed either the motion for protective order[3] or the motion to compel arbitration, the parties conferred in an attempt to eliminate the need for protracted litigation over preliminary matters. During this exchange, Mr. Salamie indicated that he would only agree to participate in arbitration if Ameritrade would stipulate that Mr. Conrad was subject to its "control" under federal securities law for purposes of establishing that Ameritrade was vicariously liable for Mr. Conrad's actions. Viewing the applicable arbitration agreements as both valid and controlling, Ameritrade refused to stipulate that it had control of Mr. Conrad or to admit that it was vicariously liable for his actions.

After the parties reached an impasse on the issue of arbitration, Mr. Salamie filed a combined response to Ameritrade's motion to compel and a motion for partial summary judgment. While unopposed to arbitration, Mr. Salamie requested a ruling from the trial court as part of the referral on whether Mr. Conrad was a "controlled person" under federal law[4] for purposes of establishing vicarious liability against Ameritrade.

By order entered on May 28, 2009, the trial court granted Ameritrade's motion to compel arbitration but also granted Mr. Salamie's motion for partial summary judgment. The trial court made the following conclusions of law as part of its order referring the underlying matter to arbitration:

4. By asserting the 1999 contracts as grounds for compelling arbitration, TD Ameritrade judicially admits that it has a responsibility to supervise with regard to:

(1) "[o]pening, approving and **monitoring** [Plaintiff's] account, including obtaining and verifying account information;

(2) "the supervision of Account Officers (registered representatives) in accordance with TD Waterhouse policies and applicable federal, state and industry regulations;"

(3) "[g]eneral supervision of [the] account, including compliance with New York Stock Exchange Rules 342 and 405 and Rule 3010 of the National Association of Securities Dealers."

(emphasis in original)

---

1. While these accounts were originally held by Ameritrade's predecessor, TD Waterhouse, the accounts are currently held by Ameritrade as the result of a series of assignments and/or other commercial transactions. *See infra,* note 2.

2. Two of the four accounts were opened with TD Waterhouse, the predecessor to Ameritrade, in 1999. Mr. Salamie later opened additional accounts in 2001 and 2003. TD Waterhouse merged with Ameritrade and became known as TD Ameritrade on or about May 14, 2007.

3. Ameritrade notes that the trial court never issued a ruling on its motion for protective order.

4. *See* 15 U.S.C. § 78t (2006).

5. The contract upon which Defendant TD Ameritrade relies squarely places Defendant Bruce P. Conrad within the purview of 15 U.S.C. § 78t as a "controlled person."

In the judgment portion of its referral ruling, the trial court expressly ordered the arbitrator to "follow the directives of this Court." Those directives included its decree "that Bruce P. Conrad is a 'controlled person' within the purview of 15 U.S.C. § 78t, Rule 3010 of the NASD, and/or related regulatory statutes and rules designed to protect customers of brokerage houses" and that "by demanding that this Court compel arbitration, [Ameritrade] judicially admits the viability of all clauses contained in the original contracts." In response to the trial court's issuance of a combined ruling on the motion to compel and on the motion for summary judgment, Ameritrade filed a rule to show cause to prohibit the enforcement of the lower court's rulings that address the merits of matters that were referred to arbitration for resolution.

## II. Standard of Review

In syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we announced the standard by which we determine whether a trial court has exceeded its jurisdiction:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines

that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With these factors in mind, we proceed to determine whether Ameritrade has established the necessary grounds for a writ of prohibition.

## III. Discussion

The argument advanced by Ameritrade in support of its entitlement to a writ of prohibition is straightforward. In syllogistic fashion, Ameritrade contends that a court is not permitted to address the merits of the underlying controversy when it decides whether a matter is subject to arbitration. By ruling that Mr. Conrad was a "controlled person" as that term is used in the Securities Exchange Act,[5] the trial court ruled upon the merits of the underlying case. In making rulings that exceeded the scope of the limited issue before it—whether arbitration was required under the account agreements executed by Mr. Salamie—the trial court exceeded the scope of its legitimate powers.

The law is well-settled "that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Discussing the general rule that courts are to decide the threshold issue of arbitrability (i.e. whether there is an enforceable agreement to arbitrate), the United States Supreme Court recognized the limited nature of that initial determination: " 'The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.' " 475 U.S. at 650, 106 S.Ct. 1415 (quoting *United Steelworkers v.*

5. *See* 15 U.S.C. § 78t.

*American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)).

The parties do not dispute that the account documents executed by Mr. Salamie with respect to each of the four investment accounts at issue contain agreements to arbitrate disputes related to those respective accounts.[6] Neither do the parties dispute the applicability of the Federal Arbitration Act ("FAA")[7] given that the controversy involves "commerce," as that term is defined under the FAA. *See* 9 U.S.C. § 1 (2006). What the parties contest is whether the trial court had the authority to address any matters in addition to the threshold issue of arbitrability.

Relying on established federal precedent that proscribes trial courts from delving into the merits of a dispute when addressing whether arbitration is required under the FAA, Ameritrade contends that the trial court overstepped its authority by making rulings on liability-related issues. *See International Union v. Cummins, Inc.*, 434 F.3d 478, 486 (6th Cir.2006) (stating that " '[t]he

agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious' ") (quoting *United Steelworkers*, 363 U.S. at 568, 80 S.Ct. 1343). When the trial court addressed the issue of Mr. Conrad being a "controlled person" under federal securities law, Ameritrade argues that it ventured outside the limitations of its constrained inquiry and improperly considered and ruled upon the merits of the case. We agree.

■ Skirting the issue of whether the trial court overstepped clearly-demarcated boundaries by ruling on the merits of the controversy and directing the arbitrator to observe those rulings, Mr. Salamie maintains that the rulings at issue were prophylactic in nature.[8] Recognizing as "black letter law" the severability doctrine, which permits trial courts to address challenges to an arbitration clause but reserves to arbitrators challenges to the contract as a whole,[9] Mr. Salamie nonetheless contends that the trial court rulings at issue were permissible.[10] *See Snowden v.*

---

6. The language governing the agreement to submit controversies to arbitration includes the following:

- In the event that there is a dispute as to any account, agreement or investment, the Employer, Participant or Investment Advisor agrees to submit to Arbitration conducted only in accordance with the provisions of the Constitution and Rules of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration of the National Association of Securities Dealers, Inc.
- The parties are waiving their right to seek remedies in court, including the right to jury trial.
- I agree that any controversy relating to any of my accounts or any agreement that I have with you will be submitted to arbitration conducted only under the provisions of the Constitution and Rules of the New York Stock Exchange, Inc. or pursuant to the code of the Arbitration of the National Association of Securities Dealers, Inc.
- All parties to this Agreement give up their right to sue each other in court, including the right to jury trial, except as provided by the rules of the arbitration forum in which a claim is filed.

7. 9 U.S.C. § 1 (2006).

8. Through the subject rulings, Mr. Salamie sought to prevent Ameritrade from successfully asserting the defense of privity of contract during arbitration.

9. A recognized exception to the severability rule that allows trial courts to address the contract as a whole exists where a party asserts there was no assent to the underlying agreement in which the arbitration language is contained. *See Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir.2002); *see also Toppings v. Meritech Mortgage Svs., Inc.*, 140 F.Supp.2d 683, 685 (S.D.W.Va.2001) (recognizing that contractual defenses of fraud, duress, or unconscionability fall within "limited review" granted to trial courts under severability doctrine).

10. In his attempt to cast the trial court rulings as specifically relating to the arbitration clause itself and not the contract as a whole, Mr. Salamie suggests that absent a ruling that Mr. Conrad is a "controlled person" under federal securities law there is no contract that would require the case to be referred to arbitration. The fact that Mr. Salamie may not be able to prove liability against Ameritrade without a ruling that Mr. Conrad was a "controlled person" does not invalidate the contractual terms which provide for arbitration of disputes between the parties and neither does it transform the issue into one that pertains solely to the arbitration clause. *See Snowden*, 290 F.3d at 636 (recognizing that "law is well-settled in this circuit that, if a party seeks to avoid arbitration ... by challenging the validity or enforceability of an arbitration provision ... the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole' ") (quoting *Hooters v. Phillips* 173 F.3d 933, 938 (4th Cir.1999)).

*CheckPoint Check Cashing,* 290 F.3d 631, 636–37 (4th Cir.2002) (discussing severability doctrine); *accord Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe,* 313 F.Supp.2d 603, 608 (S.D.W.Va.2004) ("This court can only consider challenges that 'specifically relate' to the arbitration clause, instead of to the agreement generally").

Seeking to forestall an arbitral ruling that the contracts executed between Mr. Salamie and TD Waterhouse were not binding on successor Ameritrade and also seeking to prevent the arbitrator from concluding that Mr. Conrad was not a "controlled person" under federal law, Mr. Salamie persuaded the trial court to rule on issues that involve the merits of the underlying dispute. This foray into matters reserved for arbitral resolution was clearly improper. When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement. *See Toppings v. Meritech Mortgage Svs., Inc.,* 140 F.Supp.2d 683, 685 (S.D.W.Va. 2001); *see generally Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir.1997) (explaining that trial court inquiry is limited to ensuring that dispute is arbitrable).

In seeking a ruling on whether Mr. Conrad was a "controlled person" under federal law, Mr. Salamie clearly sought to circumvent the limits imposed on trial courts by the severability doctrine.[11] *See Snowden,* 290 F.3d at 636–37. The law is clear that the trial court had no authority to rule on any issue other than whether arbitration of Mr. Salamie's claims was required under the applicable contracts. *See Toppings,* 140 F.Supp.2d at 685. By addressing issues that are expressly reserved for arbitration, the trial court exceeded the scope of its authority. Consequently, Ameritrade has demonstrated the

clear legal error necessary for a writ of prohibition to issue. *See Berger,* 199 W.Va. at 14–15, 483 S.E.2d at 14–15, syl. pt. 4.

Not only did the trial court err in addressing the merits of matters expressly reserved for arbitration but the trial court also committed error by its issuance of a partial summary judgment ruling. As part of its referral ruling, the trial court granted Mr. Salamie summary judgment on the issue of whether Mr. Conrad was a "controlled person" under federal securities law. In addition to being an improper ruling under the severability doctrine, as discussed above, the existence of unresolved factual issues concerning the relationship between Ameritrade and Mr. Conrad combined with the lack of any discovery in this case precluded a grant of partial summary judgment on this issue by the trial court. *See Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 464 F.Supp. 528, 538–39 (D.Md.1978) (recognizing that factual issues regarding level of control broker had over investment advisor precluded award of summary judgment).

Based on the foregoing, we issue the writ of prohibition sought by Ameritrade to prevent the enforcement of that portion of the ruling entered by the Circuit Court of Kanawha County on May 28, 2009, through which the trial court wrongly addressed the merits of the underlying dispute and improperly directed the arbitrator to adopt its findings of fact and conclusions of law upon the referral of this matter to arbitration.

Writ issued.

---

11. Mr. Salamie argued that he was merely requesting a ruling that all parts of the contract, and not just a portion of it, would apply when the matter proceeded to arbitration. We find this semantical explanation to be unavailing. By seeking a pre-arbitral ruling on the validity of the entire contract, Mr. Salamie sought to sidestep the general requirement that issues addressing the validity of a contract are expressly reserved to the arbitrator.