IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-0007

_____

FILED

May 30, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FORD MOTOR CREDIT COMPANY, LLC,
Plaintiff Below, Petitioner

v.

RONALD R. MILLER,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Wyoming County
The Honorable Micheal M. Cochrane, Judge
Civil Action No. 20-C-75

REVERSED AND REMANDED
_____

Submitted: April 19, 2023
Filed: May 30, 2023

Jessica L. Ellsworth, Esq.
Hogan Lovells US LLP
Washington, District of Columbia
*Pro Hac Vice*

Michael Bonasso, Esq.
Bryan N. Price, Esq.
Jason A. Proctor, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Petitioner

Troy N. Giatras, Esq.
Matthew Stonestreet, Esq.
Phillip A. Childs, Esq.
The Giatras Law Firm, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE HUTCHISON concurs and reserves the right to file a separate Opinion.

**SYLLABUS BY THE COURT**

1.      "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.      "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."  Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

3.      A party that seeks to enforce an arbitration agreement must make an initial, prima facie showing that the arbitration agreement exists between the parties.  The party may make this prima facie showing by attaching to the party's motion to compel a copy of the arbitration agreement signed by the non-moving party.  When the party seeking to compel arbitration received its right to arbitration by assignment, that party may meet its initial, prima facie burden by attaching to the party's motion to compel, along with the arbitration agreement, a copy of each duly executed assignment necessary to show a chain of assignment from an original party under the arbitration agreement to the party seeking to compel arbitration.

i

**Armstead, Justice:**

Petitioner, Ford Motor Credit Company, LLC, ("Ford Credit") sued Respondent, Ronald R. Miller, in the Circuit Court of Wyoming County to collect the unpaid balance on an automobile loan. When Mr. Miller filed a class-action counterclaim to challenge Ford Credit's collection practices, Ford Credit moved to compel arbitration and attached to its motion a copy of a retail installment contract containing the arbitration provisions that Ford Credit sought to enforce. Mr. Miller did not deny that he signed the retail installment contract or that the copy attached to Ford Credit's motion was authentic. In fact, he attached a copy of the same retail installment contract to his own brief opposing Ford Credit's motion. Nevertheless, the circuit court found that Ford Credit failed to offer any "admissible evidence" in support of its right to arbitration and denied Ford Credit's motion to compel arbitration. Ford Credit appeals from this decision, and, after review, we find that the circuit court erred in determining that Ford Credit failed to meet its light evidentiary burden to show the existence of an arbitration agreement. Accordingly, we reverse the circuit court and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Miller purchased a Lincoln MKX on credit through Ford Credit. When he failed to make his payments, Ford Credit sued him in circuit court for the alleged balance due on the loan. With its complaint, Ford Credit filed a copy of a retail installment contract. The retail installment contract, which is dated February 18, 2017, and which purports to be

1

signed by Mr. Miller in three places, contains an arbitration provision and assigns "all" the dealership's "rights, privileges, and remedies" to "Ford Motor Credit Company."[1]

Mr. Miller answered the complaint and asserted a class-action counterclaim for unlawful debt collection practices. In response, Ford Credit moved to compel arbitration and attached a second copy of the retail installment contract to its motion. Later, Ford Credit moved to stay discovery.

Mr. Miller opposed the motion to compel arbitration, arguing that the arbitration agreement is unconscionable and that Ford Credit waived arbitration by filing suit. Mr. Miller did not deny, however, that he *signed* the retail installment contract or that the copies of the retail installment contract attached to Ford Credit's complaint and its motion to compel were *authentic*. On the contrary, he attached a third copy of the same retail installment contract to his response (including a separate, enlarged page depicting the arbitration provisions) and implicitly affirmed the contract's authenticity:

> On February 18, 2017, in search of a new vehicle, Mr. Miller turned to Mountaineer Automotive in Beckley, West Virginia. Mountaineer Automotive sold Mr. Miller a 2016 Lincoln MKX for $59,900.40. *See* Retail Installment Contract and Security Agreement, attached hereto as **Exhibit A**.
>
> Mr. Miller signed a contract as part of the purchase of the MKX. *See* Retail Installment Contract and Security Agreement, attached to Complaint. It was written in small font, single-spaced and [sic] numerous compacted terms and conditions. *See Id.* On the side opposite of the signing page

---

[1] The affidavit attached to the complaint explains that "Ford Motor Credit Company" is now known as "Ford Motor Credit Company LLC." *See id.* (stating that Mr. Miller is "indebted to Ford Motor Credit Company LLC, formerly Ford Motor Credit Company").

2

there was an arbitration agreement with Ford Motor Credit. *See* Arbitration Clause, attached hereto as **Exhibit B**.

In an affidavit attached to his response to the motion to compel arbitration, Mr. Miller further authenticated the retail installment contract by alleging as follows:

3. I bought a 2016 Lincoln MKX from Mountaineer Automotive in Beckley, West Virginia on February 18, 2017.

4. I financed my Lincoln MKX through *Ford Motor Credit Company, LLC*.

5. At the time *I signed the finance agreement*, no one explained to me *what I was signing*.

6. *I was presented with the finance agreement* with the understanding I must sign it to get my vehicle.

7. The finance agreement was written in small print, making it hard to understand what was written.

8. I did not understand that *the contract had an arbitration agreement* and still do not understand what arbitration is or what rights I am alleged to have waived.

9. No attention was drawn to *the arbitration agreement in the finance contract*.

10. I never received any explanation from Ford Motor Credit regarding the finance agreement *or the arbitration agreement contained therein*.

(Emphasis added.)

The parties appeared for a hearing in September 2021 on the motion to compel arbitration. During the hearing, Mr. Miller's attorneys argued for the first time that Ford Credit had failed to prove either the assignment or the arbitration agreement, citing

3

our decision in *Frontline Asset Strategies, LLC v. Rutledge*, No. 20-0395, 2021 WL 1972277 (W. Va. May 17, 2021) (memorandum decision). Ford Credit's attorney confessed that he was unfamiliar with *Frontline* and requested that the court allow him to file a brief after reviewing the decision. The court denied such request and said that it would read the case itself.

Three days later, Ford Credit served a supplemental brief arguing, based on our opinion in *State ex rel. Troy Group, Inc. v. Sims*, 244 W. Va. 203, 852 S.E.2d 270 (2020), that Ford Credit had met its burden of proving the arbitration agreement's existence and that Mr. Miller's argument to the contrary was untimely. Nevertheless, Ford Credit also filed an affidavit authenticating the retail installment contract and confirming the assignment from the dealership to Ford Credit.

Mr. Miller moved to strike these filings, and after further briefing and a hearing on November 12, 2021, the circuit court denied Ford Credit's motion to compel arbitration. According to the circuit court, Ford Credit "failed to provide evidence that an arbitration agreement exists or was transferred with the right to collect the original debt." Ford Credit appeals from the circuit court's December 6, 2021 order refusing to compel arbitration.

## II. STANDARD OF REVIEW

Although Ford Credit appeals an interlocutory order, we note that this appeal is properly before us. We have held that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order

4

doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017). With this standard of review in mind, we will consider Ford Credit's appeal.

## III. ANALYSIS

Ford Credit argues that the circuit court erred in two respects. First, Ford Credit alleges that the circuit court erred by finding that it failed to prove that an arbitration agreement exists between the parties. Secondly, Ford Credit maintains that the circuit court erred by denying it an opportunity to respond to Mr. Miller's last-minute argument opposing arbitration. Ford Credit asks us to vacate the circuit court's order and remand this case to the circuit court with instructions to either compel arbitration or rule on Mr. Miller's waiver and unconscionability objections.

Mr. Miller responds that the record shows Ford Credit's "absolute failure" to prove the existence of a valid arbitration agreement through "affidavits, witnesses, or even a simple request to enter evidence into the record" and that it was hardly a "surprise tactic" for him to insist that Ford Credit provide "threshold evidence *for its own motion*." He maintains that "[t]his appeal is nothing more than an attempt to re-do a hearing that did not go well" for Ford Credit. We disagree.

When a party moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the trial court must determine "(1) whether a valid

5

arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, in part, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010). In this case, no one denies that the FAA applies or that Mr. Miller's claims fall within the arbitration agreement contained in the retail installment contract. The question is whether Ford Credit has made a prima facie showing that a valid arbitration agreement exists between the parties.

In his written response below to Ford Credit's motion to compel arbitration, Mr. Miller alleged that the arbitration agreement is not enforceable because Ford Credit waived its right to arbitration (by filing an action in circuit court) and because the arbitration agreement is procedurally and substantively unconscionable. However, the nature of Mr. Miller's argument changed when the parties appeared before the circuit court for the hearing on the motion to compel arbitration. At the hearing, Mr. Miller instead questioned whether there is an arbitration agreement between the parties. He did not deny, however, that he signed the retail installment contract or that the copies of the retail installment contract filed with the court were authentic. To do so would have contradicted his own sworn statements. What he argued, and what the circuit court subsequently found, was that Ford Credit failed to establish the arbitration agreement's existence as a matter of *evidence*. According to the circuit court, Ford Credit "did not move for the admission of any evidence, provide any witness testimony, or provide an affidavit prior to or during its hearing to compel arbitration." Thus, it made no difference to the court (a) that Ford Credit

6

had filed multiple copies of the retail installment contract with the court, (b) that Mr. Miller had filed a copy of the same retail installment contract with the court, or (c) that Mr. Miller had filed an affidavit admitting that he signed the retail installment contract and financed his purchase through Ford Credit.  We find that the circuit court misinterpreted Ford Credit's duty as the party seeking to compel arbitration.

A party who seeks to enforce an arbitration agreement must make an initial, prima facie showing that the agreement exists between the parties.  *See Troy Group,* 244 W. Va. 203, 209-10, 852 S.E.2d 270, 276-77;  *See also Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) (quoting *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (summary order)) (stating that "[t]he party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue'"); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (noting that "once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement");  *Ex parte Greenstreet, Inc.*, 806 So. 2d 1203, 1209 (Ala. 2001) (holding "that once a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists . . . , the burden of persuasion shifts to the party opposing arbitration"); and *Kindred Nursing Centers Ltd. P'ship v. Chrzanowski*, 338 Ga. App. 708, 713, 791 S.E.2d 601, 605 (2016) (noting that party who bore "the burden of proving the existence of a valid and enforceable

7

agreement to arbitrate" "established a prima facie case" by producing a signed alternative dispute resolution agreement).

In *Troy Group*, we explained that this initial burden of establishing the existence of an arbitration agreement is a *light* burden. *Troy Group*, 244 W. Va. at 210, 852 S.E.2d at 277 (stating that "the burden of establishing prima facie evidence of an agreement to arbitrate is a light one"). Specifically, in *Troy Group,* we found that the parties seeking to compel arbitration "met their initial burden of proving the existence of an agreement to arbitrate by producing, *as an attachment to their motion to dismiss/compel arbitration*, a written copy of the arbitration agreement containing . . . [the non-moving party's] signature." *Id.* (emphasis added).[2] Likewise, in this case, Ford Credit attached the retail installment contract, which included the arbitration agreement, to its motion to compel arbitration. Moreover, Mr. Miller's own documents filed with the circuit court included such agreement and confirm the arbitration agreement's existence and authenticity. Accordingly, Ford Credit clearly met its light burden to establish the existence of an arbitration agreement. Once this burden is met, it becomes the non-moving party's burden to show that the arbitration agreement is not authentic and that it is not the

---

[2] *See also MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (stating that a party seeking to compel arbitration "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ] to arbitrate" (alterations in original) (quoting *Louisville Peterbilt*, 132 S.W.3d at 857).

8

non-moving party's signature on that agreement. *Troy Group*, 244 W. Va. at 213, 852 S.E.2d at 280.[3]

Despite the fact that Ford Credit included the arbitration agreement as an attachment to its motion to compel arbitration, Mr. Miller cites our decision in *Frontline* and contends that Ford Credit failed to "provide evidence that an arbitration agreement . . . was assigned with the right to collect the original debt." We find that the holding in *Frontline* unpersuasive in the current matter. In *Frontline*, the debtors, as the non-moving parties, conceded that they had entered into arbitration agreements with their original creditors, and we found that this concession "relieve[d] Frontline of a portion of its initial burden of proving the existence of an agreement to arbitrate." *Id.*, No. 20-0395, 2021 WL 1972277, at *3. Nevertheless, because Frontline was neither the original creditor nor the

---

[3] Mr. Miller attempts to distinguish *Troy Group* by noting that the moving party in *Troy Group* "actually proved it possessed arbitration rights" and participated in discovery. He objects that Ford Credit, by contrast, "outright refused to participate in any discovery" and sought a protective order. This objection ignores the fact that, in *Troy Group*, the employee initially swore that she did not recall "seeing or signing" the arbitration agreement. *Id.* at 206, 852 S.E.2d at 273. This prompted the circuit court to order ninety days of limited discovery "on any issues related to the arbitration agreement and the pending motion to dismiss/compel arbitration." *Id.* Later, the employee swore that the signature on the agreement was not genuine. *Id.* at 207, 852 S.E.2d at 274. Thus, in *Troy Group* the question was not whether the moving parties had met their "light" prima facie burden. The court in *Troy Group* expressly found that the moving parties met that burden by attaching a copy of the arbitration agreement to their motion. *Id.* at 210, 852 S.E.2d at 277. The question was whether, once the moving parties' prima facie burden had been met, the employee, as the non-moving party, met her burden of disproving the agreement's authenticity. *Id.* (stating that "[p]etitioners met their initial burden of proving the existence of an agreement to arbitrate by producing . . . a written copy of the arbitration agreement containing Ms. Willis' signature" and that "Ms. Willis then challenged the admissibility and authenticity of the arbitration agreement . . . under the West Virginia Rules of Evidence").

purchaser of the debtors' obligations, we found that Frontline had failed to "prove that such [arbitration] agreement exists 'between the parties.'" *Id.* (quoting *TD Ameritrade*, 225 W. Va. at 251, 692 S.E.2d at 294, syl. pt. 2, in part). We further stated that, "[t]o compel arbitration, Frontline [as the party seeking to compel arbitration] must prove the assignment of that particular right from the original creditor to its current client or to itself." *Frontline*, No. 20-0395, 2021 WL 1972277, at *3.

In *Frontline*, despite the passage of approximately two years, Frontline produced no "documents from the purported current owners of the subject debts." *Id.* at *4. The only proofs it could offer were copies of its own letters to the debtors, documents that it claimed "only the current owner of the subject debts" would possess, and a "conclusory" and unnotarized declaration to the effect that Frontline had "determined" that it was assigned the delinquent accounts. *Id.* On those facts, we affirmed the circuit court's refusal to compel arbitration, finding that Frontline had failed to establish "that the arbitration rights of the original creditors were effectively assigned to it" and, accordingly, that "Frontline ha[d] failed to show that a valid arbitration agreement exists between it and Respondents." *Id.* at *5.

The facts of this case are plainly distinguishable from those in *Frontline*. Ford Credit has produced a signed document that contains not only the arbitration agreement between Mr. Miller and the dealership but also the express assignment of "all" the dealership's "rights, privileges, and remedies" to Ford Credit. Nothing in *Frontline* suggests that the initial burden to produce prima facie evidence of the existence of an

10

arbitration agreement is any greater when the party that seeks to compel arbitration received its right to compel arbitration by assignment. Accordingly, a party that seeks to enforce an arbitration agreement must make an initial, prima facie showing that the arbitration agreement exists between the parties. The party may make this prima facie showing by attaching to the party's motion to compel a copy of the arbitration agreement signed by the non-moving party. When the party seeking to compel arbitration received its right to arbitration by assignment, that party may meet its initial, prima facie burden by attaching to the party's motion to compel, along with the arbitration agreement, a copy of each duly executed assignment necessary to show a chain of assignment from an original party under the arbitration agreement to the party seeking to compel arbitration.[4]

Accordingly, and on the facts of this case, we find that Ford Credit made an initial, prima facie showing that an arbitration agreement exists between the parties when it attached to its motion to compel a copy of the signed retail installment contract containing both the arbitration agreement and the assignment of "all" rights from the dealership to Ford Credit. We find, further, that the circuit court erred when it determined that Ford Credit failed to meet this light evidentiary burden. Because Mr. Miller does not contest his

---

[4] In his brief, Mr. Miller cites several cases from other jurisdictions that he claims support the circuit court's decision. However, this Court has spoken in *Troy Group*, and we see no reason to revisit that decision. We also note that the cases he cites are distinguishable from the facts of the present case.

11

signature on the retail installment contract or the contract's authenticity, we find that the existence of an arbitration agreement between the parties has been established.[5]

## IV.  CONCLUSION

Based on the foregoing, we reverse the circuit court's December 6, 2021 order denying Ford Credit's motion to compel arbitration, and we remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed and Remanded.

---

[5] Ford Credit also asks us to (1) decide that it has not waived its right to arbitration, (2) enforce the arbitration agreement's delegation clause, and (3) remand this case with instructions to compel arbitration.  However, we note that, because the circuit court erroneously held that Ford Credit had failed to meet its initial burden to establish the existence of an arbitration agreement between the parties, the circuit court has yet to rule on these matters in the first instance; therefore, we decline to rule on them at this time.

Furthermore, because we have heard the parties' arguments regarding our prior decisions in *Troy Group* and *Frontline*, and have remanded this case for further proceedings, we need not decide whether the circuit court erred by not affording Ford Credit an opportunity to brief its position below.

12