STATE OF WEST VIRGINIA

**Council for Educational Travel
United States of America, Inc.,
Defendant Below, Petitioner**

**v.)  No. 22-928** (Cabell County 22-C-171)

**M.S.,
Plaintiff Below, Respondent**

**FILED**

**April 11, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Council for Educational Travel United States of America, Inc. ("Petitioner"), appeals the Circuit Court of Cabell County's November 16, 2022, order denying Petitioner's motion to dismiss and compel arbitration.[1]  Respondent M.S.[2] ("Respondent") asserts multiple causes of action arising out of alleged injuries she suffered while she was participating in a high school foreign exchange program administered and operated by Petitioner.  Prior to participating in the foreign exchange program, Respondent and her parents entered into a contract with Petitioner that included an arbitration provision. The circuit court ruled that the arbitration provision was unenforceable.  Upon review, we agree with the circuit court's ruling and find that a memorandum decision affirming its order is appropriate. *See* W. Va. R. App. P. 21.

In December of 2020, Respondent and her parents, who are Brazilian citizens, signed an agreement ("Program Agreement") with Petitioner, a California corporation that coordinates international student exchange programs.  The Program Agreement provided the terms and conditions to which Respondent and her parents agreed

---

[1] Petitioner appears by counsel John R. Merinar, Jr. and Anna V. Pugh.  Respondent appears by counsel Ben Salango, Sarah Hunter, Christian Huffman and Paul S. Saluja.

[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g.*, *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

relating to Respondent's participation in Petitioner's student exchange program. Respondent was sixteen when she signed the Program Agreement.[3]

The Program Agreement included the following provisions:

**M.     Arbitration and Venue:** This Agreement shall be deemed to have been made in the State of California, USA and its validity, construction, breach, performance, and interpretation shall be governed by the laws of the State of California, USA. The parties to the Agreement acknowledge and agree that any dispute or claim arising out of this Agreement, any resulting or related transaction, or the relationship of the parties, shall be decided by neutral, exclusive and binding arbitration in the County of Orange, State of California, USA. . . . In the event that the arbitration clause is deemed void or inapplicable, each party expressly consents to and submits to the personal jurisdiction of the federal or state court(s) of Orange County, California, USA[.]

**N.     Authority of Parent/Guardian:** Each parent/guardian who signs this Agreement represents and warrants that he or she, together with the other parent/guardian who signs this Agreement, if any, is the custodial parent/guardian of the Student and has full authority to sign this Agreement on behalf of the Student as his/her legal guardian without the consent or approval of any other person[.]

**O.     Ratification of Agreement**: In the event the Student is under the age of 18 at the time of execution of this Agreement, and the Student attains 18 years of age while participating in the Program, [the] Student agrees that continued participation in the [P]rogram after he/she attains 18 is deemed a ratification

---

[3] Prior to entering into the Program Agreement with Petitioner, Respondent's parents contracted with another company, Experimento Intercambio Cultural, for "intermediary services" related to finding an exchange program for Respondent. According to the Experimento Contract, Respondent's parents agreed to "[s]ign all the instruments and appendixes with the foreign institution," i.e., Petitioner, selected by Experimento to administer Respondent's exchange program.

and adoption of all the terms and conditions of this Agreement.[4]

In August of 2021, Petitioner placed Respondent with a host family in Huntington, West Virginia. The host family included Darrel Wells ("Mr. Wells"). Mr. Wells allegedly installed hidden cameras in Respondent's bedroom and bathroom, surreptitiously recording her.[5] Respondent discovered the recordings in April of 2022. She immediately left the Wells' residence and contacted the police. She also contacted Petitioner and states that she spoke "with one of [Petitioner's] directors." According to Respondent's complaint, the director chastised Respondent for contacting the police and tried to coerce her into signing a "Program Release" form by "falsely and fraudulently claiming that failing to sign the Program Release would jeopardize her visa status and she would be unable to return to the United States."

On May 12, 2022, Respondent's father[6] filed this lawsuit on Respondent's behalf against Petitioner and Mr. Wells, asserting causes of action for negligence, intentional infliction of emotional distress, and violation of the West Virginia Wiretapping and Electronic Surveillance Act, West Virginia Code §§ 62-1D-1 to -16. On August 4, 2022, Petitioner filed a "Motion to Dismiss and Compel Arbitration, or in the Alternative, to Dismiss." Petitioner asserted, among other arguments, that the Program Agreement contains (1) a valid arbitration agreement that should be enforced; and (2) a valid choice of law provision directing that "the laws of California shall govern" the Program Agreement's validity, construction, and interpretation.

The circuit court entered an order on September 16, 2022, substituting Respondent as the named plaintiff in this case, replacing her father, after Respondent advised the court that she had reached the age of majority.[7] On September 22, 2022,

---

[4] In addition to the Program Agreement, Petitioner notes that Respondent and her parents signed a purported liability release form. Because the dispositive issue in this appeal is whether the arbitration provision is enforceable, a detailed discussion of the purported liability release form is unnecessary.

[5] According to Respondent's complaint, Mr. Wells "secretly obtained more than 100,000 images and video recordings of [Respondent], including while she was in the shower and getting dressed, without her knowledge or consent."

[6] Respondent was still a minor on May 12, 2022, when this lawsuit was filed.

[7] Respondent attained the age of majority approximately three weeks after this lawsuit was filed.

3

Respondent's counsel sent a letter notifying Petitioner that Respondent, who had now attained the age of majority, was disaffirming the Program Agreement, including its arbitration provision.

On September 27, 2022, Respondent filed her response to Petitioner's motion to dismiss and compel arbitration. Respondent noted that she had disaffirmed the Program Agreement and stated that "under either West Virginia or California law, [Respondent] cannot be compelled to arbitrate the claims stated in the Complaint filed in this action."[8]

After holding a hearing, the circuit court denied Petitioner's motion to dismiss and compel arbitration. The circuit court determined that Respondent, upon reaching the age of majority, disaffirmed the Program Agreement, including the arbitration provision. The circuit court applied West Virginia's disaffirmance law[9] and relied on a recent case from this Court in which we recognized that

> West Virginia law clearly provides that "[c]ontracts by minors are generally not void, but voidable only, and may be ratified or disaffirmed after majority." Syl. Pt. 1, *Hobbs v. Hinton Foundry Mach. & Plumbing Co.*, 74 W. Va. 443, 82 S.E. 267 (1914). *See also* Syl. Pt. 2, *Andrews v. Floyd*, 114 W. Va. 96, 170 S.E. 897 (1933) ("Contracts of infants, generally, are not void, but voidable at infant's election, and may be ratified or disaffirmed after majority.").

*Fitness, Fun, & Freedom, Inc. v. Perdue*, No. 20-0344, 2021 WL 653240 at *3 (W. Va. Feb. 19, 2021) (memorandum decision).

Based on its conclusion that Respondent disaffirmed the Program Agreement, the circuit court determined that Respondent "cannot be compelled to arbitrate

---

[8] Respondent's response included (1) a signed affidavit confirming that she had disaffirmed the Program Agreement; and (2) affidavits from each of her parents, stating their native language is Portuguese and that their ability to understand the Program Agreement, which was in written in English, was limited.

[9] The circuit court determined that the choice of law provision in the Program Agreement was not enforceable because "the Program Agreement bears no substantial relationship to California and California's laws are not applicable to the claims in this action." However, the circuit court also noted that even if it concluded that California law applied, its ruling would be the same because "California law is relatively consistent with West Virginia law [on this issue]."

the claims stated in the Complaint filed in this action."[10]  Following entry of the circuit court's November 16, 2022, order, Petitioner filed this appeal.

This Court has addressed our standard of review when considering a circuit court's ruling denying a motion to compel arbitration: "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013); *see also* W. Va. Code § 55-10-30.  Additionally, "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 2, *Citizens Telecomm. Co. of W. Va. v. Sheridan*, 239 W. Va. 67, 799 S.E.2d 144 (2017) (quoting Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017)).

On appeal, Petitioner challenges the circuit court's ruling denying its motion to dismiss and compel arbitration.  This Court has addressed a circuit court's role when faced with a motion to compel arbitration:

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

This case turns on the first inquiry: whether a valid arbitration agreement exists between the parties.  While Petitioner assigns error to each ground upon which the circuit court ruled in Respondent's favor, we find that the dispositive issue is whether Respondent was entitled to disaffirm the Program Agreement upon reaching the age of

---

[10] The circuit court also determined that (1) the arbitration provision is unconscionable because it is "a non-negotiable term in an adhesion contract," lacks mutual assent, and is against public policy; (2) Respondent's claims were not for breach of contract and therefore were outside of the scope of the arbitration provision; and (3) the forum selection clause in the Program Agreement is not mandatory.

majority.[11]  In answering this question, we first explain our conclusion that California law applies to this issue based on the choice of law provision in the Program Agreement.  We then address our finding that under California law, Respondent was entitled to disaffirm the Program Agreement, including its arbitration provision.

The Program Agreement contains a choice of law provision providing that it "shall be deemed to have been made in the State of California, USA and its validity, construction, breach, performance, and interpretation shall be governed by the laws of the State of California[.]"  This Court has recognized "the presumptive validity of a choice of law provision, (1) unless the provision bears no substantial relationship to the chosen jurisdiction or (2) the application of the laws of the chosen jurisdiction would offend the public policy of this State." *Manville Pers. Inj. Settlement Tr. v. Blankenship*, 231 W. Va. 637, 644, 749 S.E.2d 329, 336 (2013) (internal citations omitted).[12]

Regarding the substantial relationship prong of this test, Petitioner is incorporated in California and the Program Agreement provides that "it shall be deemed to have been made" in California.  We note that while Respondent was eventually placed in West Virginia, when the parties entered into the Program Agreement, Respondent's particular destination had not been selected.  While this Court has never addressed whether this exact set of circumstances is sufficient to satisfy the substantial relationship prong of our choice of law test, we find that under the specific facts of this case, the choice of law provision should be given effect.  In arriving at this conclusion, we are persuaded by the rationale set forth by the United States District Court for the Northern District of West Virginia that considered a similar issue and found

---

[11] Petitioner raises five assignments of error, asserting that the circuit court erred by ruling that (1) West Virginia's substantive law governs this action, when the parties' Program Agreement states that California law shall govern its validity, construction, and interpretation; (2) the Program Agreement is unenforceable because Respondent purported to disaffirm it; (3) the arbitration provision is unenforceable because it is unconscionable; (4) the claims asserted by Respondent fall outside the scope of the arbitration provision; and (5) the forum selection clause, which is part of the Program Agreement, is not mandatory.  Because we conclude that Respondent disaffirmed the Program Agreement, we make no findings as to Petitioner's remaining assignments of error.

[12] *See* Syl. Pt. 1, *Gen. Elec. Co. v. Keyser*, 166 W. Va. 456, 275 S.E.2d 289 (1981) ("A choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state.").

6

where application of a foreign state's law does not offend West Virginia public policy, one party's incorporation in that state is a contact sufficient to allow the parties to choose its law to govern its contract. This holding is consistent not only with the West Virginia Supreme Court's ruling in *Keyser* . . . but also with § 187 of the Restatement.

The comments to § 187 note that the "substantial relationship" test is met "where one of the parties is domiciled" in the chosen state, and a corporation's "domicile" is its state of incorporation. . . . *See*, *e.g.*, *Valley Juice Ltd. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d Cir. 1996) ("[T]he Restatement . . . makes clear that the incorporation of one party in the state whose law is chosen under the contract is sufficient to satisfy any applicable contacts requirement."); *Carlock v. Pillsbury Co.*, 719 F. Supp. 791, 807 (D. Minn. 1979) ("A party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract."); *Schroeder v. Rynel, Ltd.*, 720 A.2d 1164, 1166 (Me. 1998) ("Incorporation in a state constitutes a substantial relationship.")[.]

*Sherrell v. FTS Int'l, Inc.*, No. 5:19-CV-181, 2019 WL 3082463, at *3 (N.D.W. Va. July 15, 2019).

We also find that the choice of law provision should be given effect because applying California law does not offend our public policy. As discussed at length below, California, like West Virginia,[13] generally allows a person who reaches the age of majority to disaffirm a contract they entered into as a minor. Based on the foregoing, we find that the choice of law provision should be given effect and, therefore, California law applies to whether Respondent was entitled to disaffirm the Program Agreement upon reaching the age of majority.

Next, we examine California's law which provides that, subject to certain statutory exceptions, a minor may disaffirm a contract prior to or within a reasonable time after reaching the age of majority. Before examining California's statutory law on this issue, we briefly discuss the process and policy underlying disaffirmance.

---

[13] *See* Syl. Pt. 1, *Hobbs*, 74 W. Va. 443, 82 S.E. 267 ("Contracts by minors are generally not void, but voidable only, and may be ratified or disaffirmed after majority.").

7

Disaffirmance "may be made by any act or declaration" indicating an intent to disaffirm. *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972). Further, "[n]o specific language is required to communicate an intent to disaffirm[.]" *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007). California has recognized that disaffirmance by a minor rescinds the entire contract, rendering it "a nullity." *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal. App. 2d 181, 183 (1963). The policy behind disaffirmance has been described as follows: "The rule has traditionally been that the law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts." *Michaelis v. Schori*, 20 Cal. App. 4th 133, 136 (1993) (internal citation and quotation omitted).

Turning to the specific statute addressing disaffirmance, California Family Code § 6710 (1994) provides: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative." *See also* Cal. Family Code § 6700 (1994) ("Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, *subject to the power of disaffirmance*[.]") (emphasis added).

California Family Code § 6712 (1994) sets forth the exceptions to a minor's right to disaffirm:

> A contract, otherwise valid, entered into during minority, may not be disaffirmed on that ground either during the actual minority of the person entering into the contract, or at any time thereafter, if all of the following requirements are satisfied:
>
> (a) The contract is to pay the reasonable value of things necessary for the support of the minor or the minor's family.
>
> (b) These things have been actually furnished to the minor or to the minor's family.
>
> (c) The contract is entered into by the minor when not under the care of a parent or guardian able to provide for the minor or the minor's family.

The United States District Court for the Northern District of California examined these exceptions in a case involving a minor's purported disaffirmance of an employment contract that contained an arbitration provision. *Lopez v. Kmart Corp.*, No. 15-cv-01089-JSC, 2015 WL 2062606 (N.D. Cal. 2015). The District Court observed that "the California legislature expressly excepted particular types of contracts, and did not

except . . . arbitration agreements like the agreement at issue here, [which] further supports the Court's conclusion that Plaintiff's right to disaffirmance remains intact in this instance." *Id.* at *5. *See also Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740 (2020) (affirming a trial court's decision that the plaintiff, who had reached the age of majority, was entitled to disaffirm a contract containing an arbitration provision that she entered into as a minor).

Petitioner does not address California Family Code § 6710 or argue that any of the statutory exceptions apply. Instead, Petitioner asserts that under California law, a minor cannot disaffirm a contract that their parents entered into on their behalf. In support of this argument, Petitioner relies on a 1965 case, *Doyle v. Giuliucci*, 62 Cal. 2d 606 (1965), in which the court ruled that a minor could not disaffirm a medical contract containing an arbitration provision that was signed by the minor's parent. We find that the court's ruling in *Doyle* is distinguishable from the instant case for a number of reasons. First, *Doyle* was decided prior to the enactment of California Family Code § 6710, which sets forth the general rule that, subject to certain statutory exceptions, a minor may disaffirm a contract. Second, unlike the instant case, *Doyle* involved a *medical contract* signed by a parent on a minor's behalf. California has specifically exempted *medical contracts* signed by a minor's parent from the general rule permitting disaffirmance. *See* Cal. Civ. Proc. Code § 1295(d) (2023) ("Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian."). Third, the California legislature clearly knows how to set forth specific exceptions to the general rule permitting a minor to disaffirm a contract. As recognized by a recent California case, there is not a parental-signature exception to the general rule that a minor may disaffirm a contract.

In *C.D. v. BNI Treatment Ctrs., LLC*, 2023 WL 194435, (Cal. App. 2d Dist. 2023),[14] the court recognized that "there is no general parental-signature exception to [California Family Code §] 6710." *Id.* at *4.[15] The court also noted that statutory exceptions to a minor's right to disaffirm a contract include "certain contracts for necessaries (§ 6712) and certain entertainment and athletic contracts (§§ 6750-6751) . . . contracts for specific categories of medical treatment . . . [and] certain contracts for mental

---

[14] While this is an unpublished case, we find its discussion of California's law on disaffirmance to be relevant to our inquiry.

[15] In *Berg v. Traylor*, the court found that a minor could disaffirm a contract with a personal manager that the minor's mother signed. 148 Cal. App. 4th 809. In so ruling, the court specifically rejected the argument that "a minor may not disaffirm an agreement signed by a parent." 148 Cal. App. 4th at 818.

health treatment or counseling (§ 6924)." *Id.* at *3. Respondent's participation in a student exchange program does not fall into any of these statutory exceptions.

Further, even assuming arguendo that California recognized a parental-signature exception to California Family Code § 6710, such exception would not apply in the instant case because *Respondent* and her parents signed the Program Agreement. Thus, the present case is distinguishable from *Doyle* and similar cases in which courts have found that a minor may not disaffirm a contract entered into by a parent on a minor's behalf and a third party. In the present case, Respondent disaffirmed a contract that she signed on her own behalf. We find no California statute or caselaw that would prevent Respondent from disaffirming a contract under these circumstances.

In light of the foregoing, we conclude that California generally permits a minor to disaffirm a contract within a reasonable time after reaching the age of majority.[16] While there are statutory exceptions to this rule, none of these exceptions apply to the instant case. Therefore, we find that under California law, Respondent has exercised her statutory right of disaffirmance, thereby rescinding the Program Agreement, including its arbitration provision. *See Scollan*, 222 Cal. App. 2d at 183 (Disaffirmance by a minor rescinds the entire contract, rendering it "a nullity.").

Because Respondent disaffirmed the Program Agreement, we affirm the circuit court's November 16, 2022, order denying Petitioner's motion to dismiss and compel arbitration.

Affirmed.

**ISSUED**: April 11, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[16] Respondent disaffirmed the Program Agreement about four months after she reached the age of majority. Thus, we find that her disaffirmance occurred within a "reasonable time." *See Coughenour*, 57 Cal. App.5th at 750 (finding that disaffirmance occurred within a reasonable time where the plaintiff disaffirmed the contract at issue about eight months after reaching the age of majority).

10